JOSEPH STEJSKAL, Respondent, v. D. C. DARROW, Appellant.

(— A.L.R. —, 215 N. W. 83.)

**Physicians and surgeons — death by negligence of physician.**

1. In an action for damages under the Death by Wrongful Act Statute, §§ 8321–8326, inclusive, Comp. Laws 1913, brought by the plaintiff Joseph Stejskal against the defendant, a physician, on account of the death of the plaintiff's adult unmarried daughter, by reason of negligent treatment and improper care by the defendant in acting as her physician, the record is examined, and *held*, for reasons stated in the opinion:

(a) That the evidence is sufficient to sustain the finding of the jury that

Annotation.—(4) Right to allowance for funeral expenses in action for wrongful or negligent death, see annotation in 7 A.L.R. 1334; 8 R. C. L. 829, 830; 2 R. C. L. Supp. 661; 5 R. C. L. Supp. 486; 6 R. C. L. Supp. 528.

the defendant was guilty of negligence in the care given and the treatment administered to the plaintiff's daughter, and that her death resulted as a consequence of this negligence.

(b) That the evidence is sufficient to sustain the finding of the jury that the plaintiff suffered injury on account of the death of his daughter by way of loss of work and services which he was reasonably entitled to expect to receive from her in the amount of $3,000.

**Damages — damages for death — pecuniary value of services of deceased.**

2. In measuring the damages to be recovered for death by wrongful act, the statute providing that "the jury shall give such damages as they think proportionate to the injury resulting from the death to the persons entitled to the recovery," the jury may consider the pecuniary value of services which the beneficiary under the statute might reasonably have expected to receive from the person on account of whose death the action was brought.

**Damages — cannot recover for loss of society of unmarried daughter.**

3. In an action for damages for death by wrongful act, a father cannot recover on account of loss of the society and companionship of an adult unmarried daughter.

**Damages — may recover funeral expenses.**

4. In an action for damages for death by wrongful act, a father may recover on account of the reasonable and proper funeral expenses incurred and paid by him for an adult unmarried daughter.

Opinion filed August 16, 1927.

Death, 17 C. J. § 176 p. 1310 n. 37; § 202 p. 1331 n. 50; § 206 p. 1333 n. 75; § 215 p. 1339 n. 27; § 235 p. 1350 n. 7. Physicians and Surgeons, 30 Cyc. p. 1587 n. 78; p. 1590 n. 3.

Appeal from the District Court of Cass County, *Cole,* J.

Action for damages for death by wrongful act. From a judgment in favor of the plaintiff, and from an order denying his motion for a new trial or for judgment notwithstanding the verdict, defendant appeals.

Modified and affirmed.

*W. H. Barnett* and *Francis Murphy,* for appellant.

"Upon one point the cases are united, and that is, that the only damages recoverable in this action are for the pecuniary loss. Nothing can be recovered for the loss of society or for damages in the way of solatium." Haug v. Great Northern R. Co. 8 N. D. 23, 77 N. W. 97.

A pecuniary loss must be directly shown and not by mere conjecture and speculation. Rober v. N. P. R. Co. 25 N. D. 394, 142 N. W. 22.

There is no language in the statute which authorizes the payment of funeral expenses. Dalton v. S. E. R. Co. 4 C. B. N. S. 296.

*Richardson, Green & Wattam,* for respondent.

Upon an appeal from a judgment, the jurisdiction of the appellate court attaches, and that of the trial court ceases, over the parties and the subject-matter of the appeal until the cause is remanded by the appellate court for further action. Weigel v. Powers Elevator Co. 50 N. D. 776, 198 N. W. 121.

"The jury may consider as an element affecting the pecuniary value of the services of the deceased to his parents, the fact that they have been deprived of the comfort, society, and protection of their child, although these matters cannot be considered as an element of damage except from a pecuniary standpoint." 17 C. J. 1333 (77, 78).

"Whenever the technical bases of actual or constructive loss of service has once been established, damages may be recovered for all that the parent may suffer by the ruin of the daughter, and the disgrace to the family—including the natural loss and expense occasioned thereby, as well as the exemplary damages for the wilful wrong done." Dwire v. Stearns, 44 N. D. 199, 172 N. W. 69.

NUESSLE, J. This is an action for damages claimed under the Death by Wrongful Act Statute, §§ 8321–8326, inclusive, Comp. Laws 1913.

The action is brought by the plaintiff, Joseph Stejskal, against the defendant, a physician, for damages on account of the death of plaintiff's unmarried daughter. The complaint alleges that her death was due to negligent treatment and improper care by the defendant while acting as her physician. Plaintiff claims damages on account of pecuniary loss through being deprived of the services of his daughter; on account of pecuniary loss by way of loss of her care, society, and companionship; and on account of her funeral expenses paid by the plaintiff. Defendant, admitting that he was a practicing physician as alleged in the complaint, denied generally each and all of the other allegations contained therein.

The cause was tried to a jury. No evidence was offered on behalf

of defendant. A special verdict was demanded and returned. This verdict consisted of twenty-four findings of fact and was substantially in accordance with the allegations of the plaintiff's complaint. Judgment was ordered for the plaintiff upon the verdict for the sum of $3,967.75. Thereafter the defendant moved for a new trial or for judgment notwithstanding the verdict. The motion was denied. The cause is now before this court on appeal.

The defendant has assigned many errors. In his brief, however, he argues but three propositions: (1) That the evidence is insufficient to justify the special verdict respecting (a) the negligence of the defendant in failing as a physician to provide proper care and give proper treatment to plaintiff's daughter, thereby causing her death, and (b) pecuniary damages suffered by the plaintiff on account of the death of his daughter; (2) that the plaintiff is not entitled to recover damages on account of the loss of the care, society, and companionship of his daughter and; (3) that the plaintiff is not entitled to recover on account of funeral expenses paid by him for his daughter.

The record discloses that the plaintiff was a farmer 62 years of age and in good health. He was a widower with five adult children. He was in comfortable financial circumstances. He owned 480 acres of land and had very little debt. He lived upon his farm with one of his sons who was unmarried. His daughter Jessie, on account of whose death he claims to recover in this action, was 30 years of age. She was unmarried. She was a strong, vigorous, and healthy young woman. For some years it had been her custom at intervals to work away from home at domestic service. When not so employed she lived with her father, kept house for him, looked after the chores on the farm, and helped with the general farm work. For several years preceding her death she had been at home from one quarter to one half of the time, and the record tends to show that when her father needed her and asked her to return she always did so, and he had reason to believe that she would continue to do so in the future. The services she performed for him were reasonably worth $40 per month above the cost of her maintenance while she was at home. Jessie Stejskal died at Fargo on Sunday, June 28th, 1925. Her death resulted from peritonitis, hemorrhage, and shock. For some time prior to her death she had been employed as a domestic in Fargo. There is

testimony in the record tending to show that on Thursday preceding her death she was in vigorous health. She told her employer that she wanted the afternoon off in order to have some dental work done. Her employer last saw her alive about three o'clock on Thursday afternoon. She was then apparently in her normal physical condition.

The defendant is a physician who was then practicing in the city of Fargo. His office was in an office building near where her employer last saw Jessie on Thursday afternoon. At about five o'clock that afternoon the defendant brought Jessie to St. John's Hospital in the city of Fargo and tried to make arrangements to have her received at the hospital. She was then apparently very ill and suffering great pain. The defendant told the hospital authorities that he believed that she had had a miscarriage. The hospital was unable to receive her but the defendant was advised that one of the other hospitals would. Defendant then left with Jessie and returned to his office. He remained with her in his office until Sunday night. He put her on the office couch and covered her with an army blanket. The girl was very ill but he administered no treatment save to give her a little water. On Sunday night she was unconscious and he thought nothing could be done for her so he left her there and went home. When he returned on Monday morning he found her dead. A post mortem disclosed that the cause of her death was peritonitis, hemorrhage, and shock brought about by a rupture of her uterus. The rupture was due to instrumental interference with pregnancy. She had been about three months pregnant.

The jury by their special verdict found that the girl had gone to the defendant for treatment and that he had so negligently treated and cared for her that death resulted.

The proofs of the facts relating to the death of Jessie Stejskal, as above set out and on which the jury based their findings, comprised the testimony of doctors, the testimony of various witnesses who at different times had seen the girl, and testimony as to admissions made by the defendant himself respecting the time and circumstances of her death. Without going into the record more at length and without further comment, we think it sufficient to say that the record fully sustains the findings of the jury respecting her death and the cause thereof, challenged by the defendant. Regardless of whether the de-

fendant performed the operation upon her, which the testimony unquestionably shows was performed by someone, it clearly appears that immediately before or after it was performed the girl sought professional treatment of the defendant and that thereafter she remained in his care until her death. It is equally clear that the defendant was guilty of the grossest negligence in the care given and the treatment administered to her, and that the jury was well justified in finding that her death resulted as a consequence of this negligence.

Defendant further contends that the evidence is insufficient to sustain the findings of the jury as to the pecuniary damages suffered by the plaintiff through loss of work and services of his daughter by reason of her death. The jury found that the plaintiff was reasonably entitled to expect to receive work and services from his daughter for the balance of his life and that such work and services were reasonably of the value of $3,000. Defendant urges that decedent was over age; that she was under no obligation to furnish work or services to the plaintiff; that the plaintiff was well-to-do and not dependent upon his daughter; that in any event the extent and value of such work and services as the plaintiff might receive from his daughter were altogether conjectural and speculative.

Our statute, §§ 8321 et seq., under which this action is brought, is almost identical with the original Death by Wrongful Act Statute, "Lord Campbell's Act" (9 & 10 Vict. chap. 93), sections 8321 and 8322 are practically word for word §§ 1 and 2 of the original act. Similar statutes have been enacted in all of the jurisdictions of the United States. While dissimilar in some respects the theory of all is the same. In practically every instance where the question has arisen under these statutes, it has been held that in measuring the damages that may be recovered the jury may consider the pecuniary value of services which the beneficiary under the statute might reasonably have expected from the person on account of whose death the action was brought. This construction was put upon the statute in the early English leading case of Franklin v. South Eastern R. Co. 3 Hurlst. & N. 211, 157 Eng. Reprint, 448, 8 Eng. Rul. Cas. 419. In that case a father brought an action for the death of his son. The father was an old man and infirm. He had an employment for which he received a small remuneration. The son was 21 years of age,

earned good wages and did not live with his father. He was in the habit of gratuitously doing the father's work for him. The father was not dependent upon the son and was not assisted by him in any other way. It was held that the father had such reasonable expectation of pecuniary benefit from the continuance of his son's life as to enable him to maintain the action. The court in that case, per Pollock, C. B., said: "The statute does not in terms say on what principle the action it gives is to be maintainable, nor on what principle the damages are to be assessed; and the only way to ascertain what it does is to show what it does not mean. Now, it is clear that damage must be shewn, for, the jury are to 'give such damages as they think proportioned to the injury.' It has been held that these damages are not to be given as a solatium, but are to be given in reference to a pecuniary loss. That was so decided for the first time in banc in Blake v. Midland R. Co. 18 Q. B. 93, 118 Eng. Reprint, 35. It is also clear that the damages are not to be given merely in reference to the loss of a legal right, for, they are to be distributed among relations only, and not to all individuals sustaining such a loss; and accordingly the practice has not been to ascertain what benefit could have been enforced by the claimants had the deceased lived, and give damages limited thereby. If, then, the damages are not to be calculated on either of these principles, nothing remains except that they should be calculated in reference to a reasonable expectation of pecuniary benefit, as of right or otherwise, from the continuance of the life." Such has since generally been the holding of the English and American courts. See Dooley v. Seaboard Air Line R. Co. 163 N. C. 454, 79 S. E. 970, L.R.A.(N.S.) 1916E, 195, and cases cited in note; Sutherland, Damages, 4th ed. §§ 1259, et seq. This court in the case of Satterberg v. Minneapolis, St. P. & S. Ste. M. R. Co. 19 N. D. 38, 121 N. W. 70, had occasion to consider the Death by Wrongful Act statute. Judge Spalding there said: "The humane and reasonable construction seems to us to be that the statute applies to heirs at law who are prevented by the death from receiving pecuniary aid, support, or benefit which the deceased was either legally obligated to render, or which they were receiving, or had any reasonable expectation of receiving as a duty, or from a recognized sense of obligation. . . . It is the fact of injury within the limits of the statute, rather than the

legal obligation of the deceased, which governs." We can see no reason to distinguish between aid or benefit given in the way of dollars and cents and aid or benefit in the way of work and services which can be measured in dollars and cents.

In the instant case it appears that the plaintiff's daughter was accustomed to live with him and perform services for him during a portion of each year as he needed her. The time that she spent at home varied from a fourth to a half of each year. She came home whenever he sent for her and had told him that she would continue to do so. Plaintiff's testimony is that these services were reasonably worth $40 per month. It appears that the plaintiff was 62 years of age and in good health. His expectancy of life was something over thirteen years. Under these circumstances the jury found that the pecuniary value of the work and services such as the plaintiff was reasonably entitled to expect from his daughter was $3,000. It is impossible in such cases to ascertain with mathematical exactness the value of such services as may be considered by the jury. The best that can be done is to make an approximation thereof. The jury have the right to take into consideration all of the circumstances. So in this case we do not think it is possible to say that they were not warranted in their finding as to the plaintiff's pecuniary loss on this account. See Sieber v. Great Northern R. Co. 76 Minn. 269, 79 N. W. 95.

The special verdict, however, not only found that the plaintiff was reasonably entitled to expect to receive the work and services of his daughter in the future, but also that he was reasonably entitled to expect to receive from his daughter for the remainder of his life her society, companionship, care and protection, and they found that the pecuniary value thereof was $500. Apparently the trial court in submitting the question thus to the jury sought to distinguish between the material and substantial benefits in the way of work and services which the plaintiff claimed he was entitled to expect to receive from his daughter and the sentimental and intangible benefits resulting from the relationship of father and daughter. And the jury recognized this distinction. They also fixed a pecuniary value on account of the latter.

The defendant contends that there is no basis in law for recovery

on account of these items.   In this we think that the defendant is
right.   Such is unquestionably the holding of the English authorities.
See Franklin v. South Eastern R. Co. supra; Blake v. Midland R.
Co. 18 Q. B. 93, 118 Eng. Reprint, 35.   In the United States there
appears to be some diversity of holding in this regard.   See Suther-
land, Damages, 4th ed. § 1263.   Generally it is held that the stat-
ute contemplates only pecuniary loss or damage.   The term "pecuniary"
was not in the original statute, but this statute was construed as
contemplating only pecuniary damages.   In some of the later stat-
utes the term "pecuniary" was included.   So in all instances it has
been necessary to determine what is meant by "pecuniary."   Gen-
erally it has been held that such damages are to be distinguished from
damages on account of loss of society or companionship or damages
in the way of solatium.   This distinction was recognized in the case
of Haug v. Great Northern R. Co. 8 N. D. 23, 42 L.R.A. 664, 73 Am.
St. Rep. 727, 77 N. W. 97, 5 Am. Neg. Rep. 467, where this court
said : "Upon one point the cases are united, and that is the only dam-
ages recoverable in this action are for the pecuniary loss.   Nothing can
be recovered for the loss of society or for damages in the way of sola-
tium."   This also is the implication in Satterberg v. Minneapolis, St.
P. & S. Ste. M. R. Co. supra; in Scherer v. Schlaberg, 18 N. D. 421,
24 L.R.A.(N.S.) 520, 122 N. W. 1000, and in Rober v. Northern P.
R. Co. 25 N. D. 394, 142 N. W. 22.   The question of damages under
the statute is fully considered and discussed by Mr. Justice Lurton
in the case of Michigan C. R. Co. v. Vreeland, 227 U. S. 59, 57
L. ed. 417, 33 Sup. Ct. Rep. 192, Ann. Cas. 1914C, 176 where it
is held that the measure of damages is the financial benefit which might
reasonably be expected in a pecuniary way.   While this case arose un-
der the Federal Employers' Liability Act, the wording of which is
somewhat different from that of Lord Campbell's Act, nevertheless, the
court said : "The statute in giving an action for the benefit of certain
members of the family of the decedent is essentially identical with the
first act which ever provided for a cause of action arising out of the
death of a human being, that of 9 & 10 Victoria, known as Lord Camp-
bell's Act."   See also American R. Co. v. Didricksen, 227 U. S. 145,
57 L. ed. 456, 33 Sup. Ct. Rep. 224, where the court upon the authority
of the Vreeland case held that the loss to the parents of the society

and companionship of a son is not a pecuniary loss and therefore is not an element of the damages recoverable. See also in this connection Tilley v. Hudson River R. Co. 24 N. Y. 471, and 29 N. Y. 252, 86 Am. Dec. 297, where a similar conclusion was reached under a statute providing for "pecuniary" damages for death by wrongful act.

Lastly, the defendant contends that there can be no recovery by the plaintiff on account of funeral expenses incurred for his daughter; that there was no obligation upon him to pay these expenses, and that the statute confers no right to recover therefor. While the English cases hold that there may be no recovery for funeral expenses (see Dalton v. South Eastern R. Co. 4 C. B. N. S. 296, 140 Eng. Reprint, 1098), the weight of American authority is to the contrary. See 17 C. J. 1338, et seq., and cases cited. But regardless of authority we think that the plaintiff is entitled to recover on account of this item. Thought the statute conferring the right to recover damages for death by wrongful act makes no reference to damages of this character, yet its words are, "The jury shall give such damages as they think proportionate to the injury resulting from the death to the persons entitled to the recovery." Aside from the requirements of decency and convention, it was, under §§ 9624 and 9625, Comp. Laws 1913, the plaintiff's duty to bury properly the body of his deceased daughter. Failure to perform that duty would have been a misdemeanor and, in addition, would have rendered him liable to pay to the person performing such duty in his stead, treble the expense incurred by the latter in making the burial to be recovered in a civil action. Plaintiff performed the duty thus imposed upon him. He paid the expenses attendant upon such performance. That these expenses were reasonable and proper is not questioned. He is entitled to recover therefor. To hold to the contrary would to that extent diminish the damages which the statute contemplates he shall recover.

It follows that the judgment as entered on the special verdict must be reduced in the sum of $500, the sum allowed the plaintiff as damages on account of the loss of the society and companionship of his daughter, and as thus reduced must be affirmed. It is so ordered.

BIRDZELL, Ch. J., and CHRISTIANSON, BURKE, and BURR, JJ., concur.