## PETERS v. GREAT NORTHERN RY. CO.

### Civ. A. No. 1588.

District Court, D. Minnesota, Fourth Division.

June 18, 1946.

Orin M. Oulman, of Minneapolis, Minn., for plaintiff.

J. H. Mulally, Asst. General Counsel, Great Northern Railway Company, of St. Paul, Minn., for defendant.

DONOVAN, District Judge.

Plaintiff, a citizen of the State of Washington, commenced action in her own behalf and in behalf of her minor son against defendant, a Minnesota corporation, to recover damages in the sum of $125,000 and costs, alleging that her husband, Donald J. Peters, met death because of the wrongful act of defendant.

By answer "defendant admits that on August 9, 1945, while plaintiff's husband was a passenger on defendant's train known as the Empire Builder, he received injuries from which he died."

Liability by defendant having been admitted, the case was submitted to a jury on the issue of damages only. The jury returned a verdict for plaintiff in the sum of $42,000.

Defendant moved for a new trial on the grounds:

1. The verdict is against the weight of the evidence.

2. The verdict is based on passion and prejudice.

3. The verdict is excessive.

The facts are undisputed, except those pertaining to the question of damages.

Plaintiff's husband, Donald J. Peters, at the time of his death was 27 years of age. He attended grade school until ten years of age in St. Paul, Minnesota. His parents moved to Seattle in 1928, where he continued his grade and high school courses. He graduated from high school. In the meantime he became an Eagle Scout. He attended the University of Washington for two years. At the end of his second year in college he took up plumbing, becoming an apprentice in that trade. In 1941 he became a journeyman plumber.

In 1941 he went to the Aleutian Islands, to work with the United States Engineers as postmaster for about five months. He then returned to Seattle and enlisted in the United States Army Air Corps. From time to time he worked for his father, who was in the plumbing contracting business, and he also worked for the University Plumbing Company. At another time he was employed by Hibbs Plumbing Company at Port Angeles.

On July 8, 1942, he married the plaintiff. On January 9, 1943, he was called to the service, in which he had previously volunteered. He and his wife lived together from the time of their marriage until he went overseas. Between the time he became a cadet in the Army Air Corps and the time he embarked for overseas duty, he and plaintiff lived at Santa Ana, California, and Deming, New Mexico. He had also trained for the service at Kingman, Arizona, and Shreveport, Louisiana.

On January 15, 1944, he was commissioned a Second Lieutenant. Overseas he engaged in active combat duty and was advanced to the rank of First Lieutenant, on or about October 1, 1944.

It is undisputed that Donald J. Peters was a young man of unquestioned sobriety and good habits. He was not a spendthrift. He was industrious.

On October 14, 1944, about four months after he left for duty overseas, his son, Johnny, was born. He never saw his son. Returning to his home in Seattle, he met death while a passenger on one of defendant's trains, at or near the town of Michigan, North Dakota, on August 9, 1945.

Before enlisting in the Army Air Corps the earnings of plaintiff's husband varied between $90 and $100 a week. As a cadet in the Air Corps he received $75 a month. During the first three months he was overseas plaintiff received allotments of $200 each month, and after the third month she received $275 per month. The record discloses that during the period he was overseas he was paid between $350 and $400 per month.

At the time of the death of her husband, plaintiff was 25 years of age, and according to the American Experience Table of Mortality introduced in evidence by plaintiff and used by defendant's experts in figuring expectancy, her expectancy was 38.81 years, and that of her husband, 37.43 years, and the joint expectancy of plaintiff and her husband was 29.01. Defendant also introduced expert testimony relative to the present value of money, using a rate of two and one-half per cent.

The foregoing will suffice to permit a fairly accurate gauging of the damage which plaintiff sustained, and to permit an understanding approach to the remaining questions raised by defendant's motion.

Liability was admitted by answer and statement of defendant during the trial. Hence the verdict as to liability is justified by the pleadings and the evidence. Defendant's criticism is directed solely at the amount of the damages.

Is there anything in the record to indicate that the jury was swayed by passion and prejudice in arriving at the amount of damages returned? The Court is of the opinion that the jury was not influenced by passion and prejudice, and during the trial care was exercised to avoid the reception in evidence of anything that might tend to inflame the minds of the jurors to defendant's prejudice. The only plaintiff's exhibit received in evidence was the "American Experience Table of Mortality", to the introduction of which defendant had "no objection".

■ It is urged that the presence of plaintiff's minor son in the courtroom during the trial may have actuated the jury to return a larger verdict than the law permits. The child was well-behaved and spent most of the time consumed for trial purposes outside the courtroom. In any event, I cannot agree that the presence of the child in the courtroom, or reference to him in the record, constitutes such error as to require the granting of a new trial.

■ Defendant complains that the damages are so excessive as to indicate passion and prejudice. There is no hard and fast rule by which damages in cases of this character can be fixed with any certainty.

The collision causing Donald J. Peter's death occurred in the State of North Dakota. · This action is based on Sections 32-2101, 32-2102, 32-2103, and 32-2104 of Chapter 32-21 of the North Dakota Revised Code of 1943, which sections are as follows:

"32-2101. Whenever the death of a person shall be caused by a wrongful act, neglect, or default, and the act, neglect, or default is such as would have entitled the party injured, if death had not ensued, to maintain an action and recover damages in respect thereof, then and in every such case the person who, or the corporation or company which, would have been liable if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to felony.

"32-2102. In an action brought under the provisions of this chapter, the jury shall give such damages as it finds proportionate to the injury resulting from the death to the persons entitled to the recovery.

"32-2103. The action shall be brought by the following persons in the order named:

"1. The surviving husband or wife, if any; * * *."

"32-2104. The amount recovered shall not be liable for the debts of the decedent,

but shall inure to the exclusive benefit of his heirs at law in such shares as the judge before whom the case is tried shall fix in the order for judgment, and for the purpose of determining such shares the judge after the trial may make any investigation which he deems necessary."

■ The law of North Dakota and the interpretation of the quoted statutes by the Supreme Court of that State must be applied in this case. I have been unable to find any case opposing the result here arrived at by the jury.

■ The only damages recoverable and recovered in the case at bar are for the pecuniary loss sustained by plaintiff. In the Court's charge to the jury this was made clear in these words:

"The damages, gentlemen, must be solely by way of compensation for pecuniary loss. Pecuniary loss is the same as financial loss, or money loss. No compensation can be awarded for wounded feelings or grief or sorrow, for loss of companionship of the deceased, or for sympathy.

"We are concerned only with one element, and that element alone insofar as pecuniary loss is concerned, and that is the financial loss that the widow and minor son have sustained by reason of the father's death and the husband of Mrs. Peters. And the true test is: What, in view of all the facts and circumstances from the evidence, was the probable pecuniary interest of the beneficiaries in the continuance of the life of the deceased?

* * * * * *

"The measure of recovery is such an amount of damages as will fairly and reasonably compensate the widow and minor child for the loss of pecuniary benefits that they might have reasonably received if the deceased had not been killed. * * * Obviously, any part of his [decedent's] earnings which went to his own support, to his own maintenance or to his own care and upkeep cannot be recovered in this action. * * * Needless to say, damages must be reasonable. They must not be fantastic or based on anything except pecuniary or money loss, * * *."

■ In measuring damages to be recovered for death by wrongful act, as provided by the North Dakota statutes above quoted, the jury may consider the pecuniary value of services which the beneficiary, under the statute, might reasonably have expected to receive from the person on account of whose death the action was brought. Stejskal v. Darrow, 55 N.D. 606, 215 N.W. 83, 53 A.L.R. 1096. This rule of law was adhered to in the instructions given the jury, and I think it was followed by the jury.

Realizing the importance of guarding against the jury's substituting punitive for pecuniary damages, the Court was careful to impress the jury with the necessity for being fair and impartial throughout their deliberations.

■■ The assessment of damages under the facts and circumstances here existing must be left to the common sense and sound judgment of the jury. In this case, one would naturally anticipate a large verdict. The Court is satisfied that this verdict does not reflect passion or prejudice.

■ The record in the case at bar affords no ground for the trial court to substitute its judgment for that of the jury. While it was true that expert testimony on behalf of defendant indicates that the jury could have returned a verdict for a less amount than that here given plaintiff, yet the jury were not required to surrender their judgment for that of the expert who was testifying, or give controlling effect to the opinion of such witnesses. It appears to me that the jury gave full consideration to the pecuniary loss by the widow and minor son, arising out of the untimely death of the twenty-seven year old husband and father. Simpson v. Pennsylvania R. R. Co., D.C., 55 F.Supp. 652.

■ The case was well tried. It was an unusually difficult case to defend. While the verdict is substantial, I cannot say that it is excessive.

Defendant's motion for a new trial is denied and an exception is allowed.