**Elmer HENKE, Plaintiff and Respondent,**

v.

**Xavier PEYERL, Charles Williams and Rue Contracting Company of Fargo, North Dakota, a corporation, Defendants and Appellants.**

No. 7746.

Supreme Court of North Dakota.

March 18, 1958.

Duffy & Haugland, Devils Lake, for appellants .Williams and Rue Contracting Co.

Traynor & Traynor, Devils Lake, for appellant Peyerl.

Erickstad & Foughty, Devils Lake, for respondent.

JOHNSON, Judge.

This is an action for wrongful death under Chapter 32–21, NDRC 1943, brought by Elmer Henke, the father of Susan Henke, a girl 13 years of age, who died on June 11, 1956, as a result of injuries received in an automobile collision between the defendants, Xavier Peyerl and Charles Williams, which occurred at the intersection of Highways No. 2 and 20 on the evening of June 9, 1956, at about 11:30 p. m. The plaintiff's action against the defendant Peyerl is predicated on gross negligence on his part proximately causing the injuries from which Susan Henke died, and loss of her services.

As against the defendants Charles Williams and the Rue Contracting Company, a corporation, the plaintiff's action is based on the alleged negligence of Charles Williams in the operation of his automobile at the time of the accident, as an employee of the defendant Rue Contracting Company. The recovery sought against the Rue Contracting Company is solely on the basis that Charles Williams was, at the time of the accident, acting in the course of his employment, thus imposing liability upon the corporation for his alleged negligence.

The defendant Peyerl admitted the time and place of the accident and the death of Susan Henke, and that she was a guest in his car at the time of the accident. He denied that he was grossly negligent in the operation of his automobile at the time of the accident, and he alleged that if he was negligent in any way, Susan Henke assumed the risk of such negligence. He also charges that the negligence of Charles

Williams was solely responsible for the accident and the proximate cause thereof.

Charles Williams, in his separate answer, also admitted the time and place of the accident, but denied it was caused by his negligence and asserts that it was caused solely by the negligence or the gross negligence of the defendant Peyerl, because of his failure to stop prior to entering the intersection of Highways No. 2 and 20. He alleges that Highway No. 2 is an arterial, through highway and that the defendant Peyerl failed to keep his car under proper control and was negligent or grossly negligent, and therefore, solely responsible for the accident. The Rue Contracting Company, a corporation, in its separate answer, also admits the time and place of the accident, but denies that it was caused by negligence or carelessness on its part, and also denies that Charles Williams, at the time of the accident, was driving on behalf of the company, or in the course of his employment as its employee.

The case was tried to a jury. It rendered a verdict against all three defendants for $7,800. All three defendants, at the close of the trial, made motions for a directed verdict. These motions were denied. Thereafter the defendant Peyerl made a motion for judgment notwithstanding the verdict or in the alternative for a new trial, or in lieu thereof, for a reduction of the verdict. These motions were based on errors of law occurring at the trial and insufficiency of the evidence. The motions were denied. The defendants, Charles Williams and Rue Contracting Company, separately, made motions for judgment notwithstanding the verdict or for a new trial, basing them upon the insufficiency of the evidence to sustain the verdict, errors of law occurring during the trial, and the excessiveness of the verdict. We will not set out all of the alleged errors claimed by the parties, but will deal with them insofar as they affect the determination of the issues involved.

The defendant Peyerl appealed to this court from the judgment dated November 28, 1956, and from the order denying judgment notwithstanding the verdict, or in the alternative for a new trial, and also from the order denying a reduction of the verdict. The other defendants have also appealed from the judgment and the order of the trial court dated May 4, 1957, denying their motion for judgment notwithstanding the verdict or in the alternative for a new trial.

The first question for our consideration is whether or not, under the evidence and circumstances disclosed, the defendant, Xavier Peyerl, was grossly negligent, proximately causing the accident in which Susan Henke received injuries from which she died.

■ Highway No. 2 has been designated as an arterial or through highway. It runs from east to west across the entire length of the northern part of the State of North Dakota. Highway No. 20 intersects Highway No. 2 just south of the City of Devils Lake. Stop signs are posted north and south of Highway No. 2 where Highway No. 20 intersects it, warning all persons traveling thereon to come to a complete stop before attempting to enter and cross Highway No. 2. Under Section 39–0703, NDRC 1943, the Highway Commissioner may designate main traveled or through highways by erecting signs at the entrance thereto from intersecting highways, "notifying drivers of vehicles to come to a full stop before entering or crossing such designated highway." Both the defendant Peyerl and his wife testified that the defendant Peyerl came to a stop south of Highway No. 2 before attempting to enter or cross Highway No. 2 on their way home to Penn, North Dakota. They had taken their children and Susan Henke to a celebration at Tolna, North Dakota, where Susan Henke performed as a member of an accordian band. The defendant Peyerl testified that he stopped somewhere be-

tween 50 and 100 feet south of the stop sign at the entrance to Highway No. 2. There is evidence indicating that Peyerl may not have stopped at or near the stop sign on Highway No. 20. Although the defendant Peyerl claims he looked both east and west he did not see the Williams car on No. 2 traveling west. It is apparent from the evidence that Mr. Williams was in the intersection between Highways No. 2 and 20 when the collision occurred. The Peyerl car hit the left front wheel of the Williams car in his lane of travel. The Peyerl car, it is claimed, was traveling at the rate of 15 to 20 miles per hour at the time of the collision. Just before it occurred someone in the Peyerl car warned him. Skid marks left by his car on the highway were found measuring 25.6 feet. Mr. Peyerl gives no reason for the presence of the Williams car on the highway, except to say, "Only reason could be he wasn't there." Later he testified:

"Well could be car wasn't there at time when I looked, or he had no light on there, or maybe could have been blinded from that light coming against me."

If Mr. Peyerl stopped as he says somewhere between 50 and 100 feet south of the stop sign on Highway 20, he either did not have an opportunity to properly observe Highway No. 2 or he did not see what must have been plainly visible, a car coming from the east. If Mr. Peyerl did not have an adequate opportunity to observe and determine the state of the traffic on Highway No. 2 at the place he stopped, south of the stop sign on Highway 20, it was his duty to stop somewhere between the stop sign and the intersection of Highways No. 2 and 20 to determine whether it was safe for him to enter and cross Highway No. 2. That is plainly the meaning of our statute when it states:

"to come to a full stop before entering or crossing such designated highway" (referring to a through highway.)

The undoubted purpose of the statute, as is stated in Marsden v. O'Callaghan, N.D., 77 N.W.2d 522, 529, is

"the requirement that a driver of a motor vehicle come to a full stop before entering or crossing a through highway * * * is to enable a driver approaching an arterial highway to determine, first, the state of the traffic passing upon such highway, and second, whether in view of the existing traffic, if any at the time, he can safely enter upon and cross such highway."

It is clear from the evidence in this case that if Mr. Peyerl did stop, he did not take cognizance of the traffic on Highway No. 2 so as to enable him to determine whether it was safe to enter and attempt to cross the same. He did not see what was plainly visible—the presence of the Williams car which must have been close to the intersection of the two highways.

In Schleuder v. Soltow, 239 Minn. 453, 59 N.W.2d 320, 323, the court said:

"It was not only defendant's duty to stop before entering the intersection but it was his duty *to stop at a point where he could effectively observe what traffic was approaching upon the through highway. And having stopped it was his duty to remain there and to yield the right of way not only to vehicles which had entered the intersection from the through highway but to those vehicles approaching the intersection upon the through highway so closely as to constitute an immediate hazard.* Only after doing that, and all of that, was the defendant permitted to proceed on into the intersection. Where a driver of an automobile in obedience to a stop sign at a through highway has come to a full stop, as he is required to do under the statute, this in itself is an invitation to drivers approaching the intersection on the through highway so closely as to constitute an immediate hazard to

proceed on through the intersection." (Emphasis supplied.)

 Mr. Williams was traveling on Highway No. 2 in a 40 mile zone at the speed of 35 miles per hour. He knew of the stop sign and had seen the lights of the Peyerl car approaching on Highway No. 20. He had a right to assume that Mr. Peyerl would obey the warning of the stop sign, come to a full stop, properly observe the state of the traffic on Highway No. 2 so as to enable him safely to proceed to enter and cross such highway. A traveler upon a public highway has a right to assume within reasonable limits that others using it will exercise reasonable care, and obey traffic regulations, and failure to anticipate the omission of some care does not render him negligent, unless the contrary is brought to his attention. There was nothing that would put Williams on notice that the Peyerl car would enter the intersection until he could clear it. In Reiter v. Andrews, 155 Pa.Super. 449, 38 A.2d 508, it was held that where a defendant motorist stopped before entering a through highway, but immediately proceeded into the highway intending to make a left turn and the defendant's front fender came in contact with the rear of the plaintiff's automobile, the plaintiff who was traveling on a through highway was justified in assuming that defendant would obey statute and not only stop, but would yield the right of way to the plaintiff.

In Zickrick v. Strathern, 211 Minn. 329, 1 N.W.2d 134, 136, the Minnesota Supreme Court referring to a statute of similar import as ours relating to the requirement of a motorist to stop before entering a through highway, said:

"The statute demands not only that he shall stop but also that he 'shall yield the right-of-way to other vehicles * * * which are approaching so closely on said thru highway as to constitute any immediate hazard.' Only after doing all that, that is, stopping and yielding the right of way, not only

to cars on the intersection at the moment but also those which are so close as to make the hazard 'immediate,' may the entering driver proceed, and other drivers approaching the intersection be under duty to yield to the one who has stopped and is then entering."

If Mr. Williams was not about to enter the intersection at the time that the Peyerl car arrived thereat, he was so close to it as to constitute an immediate hazard requiring the Peyerl car to wait until Mr. Williams had crossed the intersection before entering and crossing it. Mr. Williams' car was equipped with lights and the patrolman testified that the right light on his car was still burning after the accident.

The jury in the case at bar has determined that the defendant, Peyerl, was grossly negligent. Gross negligence is generally a question of fact for the jury. Ledford v. Klein, N.D., 87 N.W.2d 345. It becomes a question of law only when it is clear that but one conclusion may be drawn from undisputed facts. If reasonable minds might draw different conclusions from the evidence, the question is for the jury. 10A Blashfield, Cyclopedia of Automobile Law and Practice, Perm. Ed., Section 6617, pgs. 624–626; Rogers v. Southern Pac. Co., 190 Or. 643, 227 P. 2d 979; In re Smoke's Estate, 157 Neb. 152, 59 N.W.2d 184.

In Jacobs v. Nelson, 67 N.D. 27, 268 N.W. 873, 877, this court said:

"However, where there is a question whether the acts are such as to place the defendant in the category of one guilty of gross negligence or the class of one guilty of ordinary negligence, the matter should be submitted to the jury, as the jury must determine to which class the defendant belonged. It is only when but one conclusion can be drawn from undisputed facts the matter becomes a question of law, for, if reasonable men may differ as to

the classification of the defendant, the question must be submitted to the jury and the verdict of the jury thereon is determinative of that issue."

■ Under the circumstances of the evidence in the case at bar the acts of the defendant Peyerl are such that reasonable men might differ thereon, and draw different conclusions therefrom, and therefore, the jury's finding that he was grossly negligent was a question of fact for it to decide, which we will not disturb. It was possible for the jury under the evidence to find that Peyerl did not stop at or near the stop sign on Highway No. 20.

■ There is no evidence in the record in this case that would support any assumption of risk by Susan Henke for the negligence of the defendant Peyerl.

The next question for determination is whether under the evidence the defendant Williams was guilty of any negligence at the time of the accident. He was on a through Highway, No. 2. He was driving 35 miles per hour in a 40 mile zone. While he did not see the Peyerl car stop, as the time of the accident was about 11:30 at night, the testimony shows that he did see the Peyerl car approaching from the south on Highway 20. He knew that there was a stop sign on the south side of Highway No. 2 requiring those entering it to stop before doing so. The weather conditions were fine. The road was dry. There was no fog, mist or any other circumstance that would require the defendant Williams to slacken his speed or drive at a lesser speed than authorized for the zone in which he was then located. His car was in perfect order. His lights were on. He was in his own lane of traffic.

■ The driver on a highway intersecting a favored thoroughfare, who has stopped as required, does not acquire right of way immediately after stopping as against all vehicles on the favored thoroughfare which have not yet reached the intersection. It is his duty to yield

not only to vehicles within the intersection, but also to approaching vehicles in such proximity thereto, as to constitute an apparent and immediate hazard. 2 Blashfield, Perm.Ed., Cyclopedia of Automobile Law and Practice, Section 1001, pgs. 249 and 250. See Zickrick v. Strathern, supra; Arnold v. Krug, 279 Mich. 702, 273 N.W. 322; Harkey v. Luckehe, 19 Cal.App.2d 130, 65 P.2d 77; Marsden v. O'Callaghan, N.D., 77 N.W.2d 522.

In Arnold v. Krug, supra, it is said [279 Mich. 702, 273 N.W. 324]:

"The right of way accorded to a driver upon a trunk line highway is something more than the privilege of going through the intersection in advance of a car which reaches it at the same time. Drivers approaching the trunk line are required to stop before entering the intersection whether any one is at or near the crossing or in sight on the trunk highway. It is an improved road—usually hard surfaced. Its purpose is to afford rapid transit. The driver is entitled to assume that those approaching it will obey the law and stop. *He is not obliged to have his car under such control at each intersecting road that he may stop at once and avoid collision with persons who may illegally come into his path.*" (Emphasis supplied.)

■ The operator of a vehicle on an arterial highway has a right to assume that one approaching on an intersecting highway or crossroad will drive at a proper speed, and will respect the former's right-of-way and stop before entering or crossing the arterial highway. Though it is not negligence for a favored driver to act on assumptions of this nature until he has or reasonably should have knowledge to the contrary, he is bound, after acquiring such knowledge, to exercise the care of an ordinarily prudent person. 2 Blashfield, Perm.Ed., Cyclopedia of Automobile Law and Practice, Section 1028, pages 305–307. There is nothing in the evidence in this

case that would warrant imposing the duty upon the defendant Williams to assume that the defendant Peyerl would not obey the traffic sign, and not only stop, but carefully look and determine whether it was safe for him to enter onto Highway No. 2 and to cross the same or wait until he could do so. The physical facts indicated by the evidence show that Williams was in the intersection when the Peyerl car hit him. It first hit him on the left front wheel of his car and then after the collision the Peyerl car swung around alongside of his car, so as to hit him again along the entire left side.

■ We find no evidence of any negligence whatsoever on the part of the defendant Williams in the circumstances. While there are some conflicts in Williams' testimony, and that of the sheriff, they have no materiality or bearing upon the question of Williams' negligence at the time of the accident. That evidence would only be material if the defendant Williams was under duty to anticipate that the defendant Peyerl might not stop and properly obey the traffic requirements before entering and crossing onto Highway No. 2.

With reference to the rules governing speed, as applicable to the defendant Williams, the trial court instructed the jury as follows:

"Subject to the foregoing rules the court instructs you that U. S. Highway No. 2, in the area where the collision occurred upon which the defendant Charles Williams was driving his automobile, it was presumably lawful to drive the same at a speed not exceeding forty miles per hour, for the reason that that highway in that area was posted by the State Highway Commissioner, *but such speed might be unlawful under certain circumstances as previously stated to you in the general rule.* The propriety of any rate of speed cannot be fixed at any definite number of miles per hour but what is a reasonable speed is necessarily dependent largely upon the situation and surrounding circumstances. In determining these questions the jury will take into consideration all of the facts and circumstances as disclosed by the evidence in this case." (Emphasis supplied.)

The trial court had previously charged generally with reference to speed that:

"The general rule is that any person driving an automobile on a highway shall drive the same at a careful and prudent speed, not greater than is reasonable and proper having due regard to the traffic, surface and width of the highway, and any other conditions then existing. No person shall drive any vehicle upon a highway at a speed to endanger the life, limb or property of any person. The condition of the vehicle and possible hazards must be given full consideration by the driver."

■ As we have seen Highway 2 had been posted in the area as a 40 mile zone. The defendant Williams was traveling therein within that limit. There were no weather or road conditions that would require him to drive at a lesser speed. Nor was the defendant Williams bound to anticipate that a car might drive in onto Highway No. 2 without stopping at the stop sign or some point near it, as would give the driver full vision of the intersection and that he would govern his actions accordingly. The only basis that we can find in the record that may have prompted the jury to determine that the defendant Williams was negligent may have been based upon the court's charge that it is not lawful to drive at a speed greater than is reasonable and proper having due regard for the surface, traffic and width of the highway and other conditions then existing. Highway No. 2 at the point of the accident is a wide, paved highway. While the charge given by the court was correct as a general abstract proposition of law, it was not applicable to the facts as far as Williams was concerned. He was not driving too fast

under the circumstances. There is nothing to indicate that he did not have his car under control. He was relying on his right of way as he had a right to do. He was hit by the defendant Peyerl. The Peyerl car came upon him suddenly.

We determine, as a matter of law, that under the evidence in this case there were no facts or circumstances which would warrant the jury in determining that the defendant Williams was negligent at the time of the collision between Peyerl and himself. The motion for judgment notwithstanding the verdict dismissing this action as to Williams should have been granted.

Since Williams was not negligent and there was no basis for recovery as against him, there was no legal basis for liability against the Rue Contracting Company, a corporation, his employer. Its motion for judgment notwithstanding the verdict should have been granted dismissing the action as to it.

 The defendant Peyerl contends that it was error for the trial court to refuse to strike from paragraph 8 of the complaint, the words "comfort * * * of a kind, faithful and loving child * * *" This court, in Umphrey v. Deery, 78 N.D. 211, 48 N.W.2d 897, 905, had occasion to consider at length the meaning of the phrase "pecuniary loss." In that case the appellant had contended that the damages were to be measured only "by the cash earning value of the decedent". The court said, with reference thereto:

"When this court stated in its opinion in Stejskal v. Darrow, supra [55 N.D. 606, 215 N.W. 83, 53 A.L.R. 1096], that the statute provided for compensation only for pecuniary loss, there was no intention, (and the lanquage of the opinion does not so indicate), that the word 'pecuniary' should be given any such restricted and narrow meaning as the appellant seeks to place upon it."

Since pecuniary loss is not confined to the cash earning value of the decedent, we cannot say that the trial court was in error in refusing to strike the words above quoted.

As we have seen, the evidence in this action was sufficient to warrant the jury in finding that the defendant Peyerl was grossly negligent at the time of the accident, and since it appears that no errors occurred at the trial as would entitle him to a new trial, unless the verdict is excessive, we will now determine that question.

 While the verdict in this case seems quite high, when considered in terms of the evidence, the question is whether it is so excessive as to show passion and prejudice of the jury. In determining that question there are several matters that we must keep in mind. The first is that a motion for the reduction of the verdict or for a new trial is addressed to the sound judicial discretion of the trial court and will not be disturbed on appeal except in case of manifest abuse. Montana-Dakota Utilities Co. v. Amann, N.D., 81 N.W.2d 628; Loveland v. Nieters, 79 N.D. 1, 54 N.W.2d 533; Mousel v. Widicker, N.D., 69 N.W.2d 783, 53 A.L.R.2d 884. Here the trial court, who saw and heard the witnesses and breathed the atmosphere of the trial, has determined that the verdict is not so excessive as to warrant a reduction thereof, or the granting of a new trial.

 In this case the evidence shows that Susan Henke was an eighth grade graduate, that she was a bright girl and had maintained a very good school record throughout the grades. She was in good health. She had, from all indications, a promising future. She performed with an accordian band of which she was a member. She was an obedient, cooperative and willing child. Her father's business was such that he needed the assistance of his wife in conducting it, and during such time Susan Henke did the household chores such as cleaning the house, washing the dishes, cooking or any other household duties that

were necessary, and the clear inference of the evidence is that she in fact became the housekeeper at such times. She did some baby sitting and bought some of her clothes with her earnings.

In this state in wrongful death actions, the statute provides:

"* * * the jury shall give such damages as it finds proportionate to the injury resulting from the death * *." Section 32–2102, NDRC 1943.

While the cases adjudicated in this state dealing with wrongful death under the statute have primarily dealt with damages on the basis of the pecuniary loss involved, no exact definition of pecuniary loss has been laid down. No exact definition can be given as its meaning may vary with the circumstances of each case. Monetary loss is not the equivalent of pecuniary loss. Neither is pecuniary loss necessarily confined to the minority of a child, despite what was said in Scherer v. Schlaberg, 18 N.D. 421, 122 N.W. 1000, 24 L.R.A.,N.S., 520. A parent has been allowed to recover for services that might reasonably be expected from a child after majority. See Stejskal v. Darrow, 55 N.D. 606, 215 N.W. 83, 53 A.L.R. 1096; Schultz v. Winston & Newell Co., 68 N.D. 674, 283 N.W. 69.

It is also to be remembered that in wrongful death actions the damages allowable are prospective. The obligations of a child to his parent or parents does not entirely terminate at majority.

A duty is imposed upon the child of a person who is unable to maintain himself, to maintain the parent to the extent of his or her ability. Section 50–0119, NDRC 1943. There is a reciprocal duty of support under certain conditions. Section 14–0910, NDRC 1943. See also Bismarck Hospital v. Harris, 68 N.D. 374, 280 N.W. 423, 116 A.L.R. 1274.

The jury, in an action for death by a wrongful act, is granted wide scope in estimating damages, because no hard and fast rule is possible by which the pecuniary loss may, in all cases, be measured, whether the action is for the beneficiaries or the estate of the deceased. Mathematical accuracy in measuring pecuniary loss suffered is not practicable, since it is impossible to determine with any degree of certainty the amount of pecuniary loss suffered because of death. It calls for an estimate or conclusion which must be arrived at by the balancing of mere probabilities and possibilities deduced by way of inference. 16 Am.Jur., Death, Section 376, page 247.

"Contributions which are speculative or conjectural may not properly be included. It is for the jury to determine the pecuniary value of the child's services which would have accrued to the parent but for the accident. The amount to which a parent is entitled cannot be accurately determined because of the numerous contingencies involved. The amount being very problematical, it is peculiarly for the jury to determine, after hearing all the evidence bearing upon the situation, including the parent's position in life, the physical and mental condition of the child, his surroundings and prospects, and any other matter that sheds light upon the subject. Members of juries generally have children of their own and have information as to the pecuniary value of children's services and the expense involved in their care and education. A jury is peculiarly fitted to determine the loss sustained by a parent in such a case. At best, the verdict can only be an approximation as no yardstick exists by which the correct answer can be found with exactness." Dorsey v. Yost, 151 Neb. 66, 36 N.W.2d 574, 575, 14 A.L.R.2d 544; Shields v. County of Buffalo, 161 Neb. 34, 71 N.W.2d 701.

In Stanolind Oil & Gas Co. v. Jamison, 204 Okl. 93, 227 P.2d 404, 23 A.L.R.2d 1141, a judgment for $10,000 for the death of an eight year old child was not considered ex-

cessive. In that case the court referred to Lakeview, Inc., v. Davidson, 166 Okl. 171, 26 P.2d 760, in which it was held that compensation for the loss of a child due to the negligent act of another should be measured by the experience and judgment of the jury, taking into consideration the age, sex, and condition in life of the deceased child. In that case a boy of five was involved, and a judgment of $8,000 was not considered excessive.

■ Pecuniary loss need not be established by proof in dollars and cents. A substantial loss will be presumed. Checketts v. Bowman, 70 Idaho 463, 220 P.2d 682. The verdict in that case was reduced from $40,000 to $20,000, but the court said that the determination of the award to be made was primarily for the jury. In Tufty v. Sioux Transit Co., 70 S.D. 352, 17 N.W.2d 700, 702, a $7,000 verdict for the death of a five year old girl was not considered excessive. There the court said:

"Very properly, the trial court is clothed with a latitude of discretion in dealing with this issue. As a participant in the original proceedings the trial court is best qualified to accurately judge the forces that shaped the verdict of the jury and can most readily sense the influence of passion and prejudice in an excessive verdict. For this reason, when such a verdict is set aside by a trial court, an appellate court is reluctant to disturb its ruling. For the same reason, a reviewing court should be equally cautious in dealing with a verdict the trial court has approved."

The difficulties in a case of this character stem from the absence of accurate means of measuring pecuniary losses actually suffered by others through the destruction of any particular life. Uncertainty makes room for broad differences of honest opinion between jurors in arriving at an approximation of the damage so suffered and permits reasonable minds to honestly divide on the question of whether a verdict is in fact excessive, and if so, whether it is so extremely excessive as to justify the inference or conclusion that it is the product of passion and prejudice. In the absence of any exact standard the verdict in the case at bar must be measured by all the contingencies involved. For an extended discussion of the measure of damages in wrongful death cases of infants, see Gardner v. Hobbs, 69 Idaho 288, 206 P.2d 539, 14 A.L.R.2d 485. For the amount of award in such cases see 14 A.L.R.2d 550.

Although we are of the opinion that the jury was very liberal in estimating the pecuniary loss suffered by the plaintiff in this case, the award of damages judged by the standards to which we have heretofore made reference, it is not so extremely excessive or so flagrantly so, as to justify us in holding that the trial court erred in refusing to reduce the verdict or to grant a new trial.

While the court's instructions as to damages for the wrongful death of Susan Henke were somewhat more restricted than we have indicated is permissible, even under the instructions we cannot say that the verdict is so excessive as to evidence passion and prejudice of the jury.

The judgment is affirmed as to the defendant Peyerl. The action is dismissed as to the defendants Williams and the Rue Contracting Company.

GRIMSON, C. J., and SATHRE, MORRIS and BURKE, JJ., concur.