John SCHNEIDER, as Personal Representative of the Estate of Margaret P. Schneider, John Schneider, Individually, and Colleen Schneider, Plaintiffs-Appellees,

v.

Ewald A. BAISCH, Defendant-Appellant.

Civ. No. 9328.

Supreme Court of North Dakota.

July 28, 1977.

Zuger & Bucklin, Bismarck, for defendant-appellant; argued by Leonard H. Bucklin, Bismarck.

Lundberg, Conmy, Nodland, Rosenberg, Lucas & Schulz, Bismarck, for plaintiffs-appellees; argued by A. William Lucas, Bismarck.

PAULSON, Justice.

This is an appeal from the judgment of the district court of Burleigh County dated December 23, 1976. The defendant, Ewald A. Baisch, appeals, asserting that the trial court erred in its computation of damages awarded to the plaintiffs, John Schneider, on his own behalf, and as personal representative of the Estate of Margaret P. Schneider, his deceased mother; and Colleen Schneider.

Only one issue is raised on appeal: whether a beneficiary's recovery for death by wrongful act is limited to the period of such beneficiary's actual survival lifetime if such lifetime is known at the time of trial; or whether recovery may be allowed for the period of such beneficiary's actuarial life expectancy at the time of the decedent's death, ignoring the beneficiary's actual survival lifetime. The question is one of first impression in this jurisdiction.

The instant case arose from an automobile accident which occurred on May 2, 1975, involving vehicles driven by Baisch and Henry H. Schneider, the decedent herein. Henry Schneider was survived by his wife Margaret P. Schneider, age 56, and two adult children, John and Colleen Schneider, ages 22 and 19 respectively. Margaret

Schneider died of cancer on March 29, 1976, nearly eleven months after the accident in which her husband was killed, and prior to the trial of the instant action. Her illness had been originally diagnosed a few months prior to her husband's death.

This action was brought by John Schneider, on his own behalf and as personal representative of the Estate of Margaret P. Schneider, pursuant to § 32–21–05, N.D. C.C., and by Colleen Schneider. At the trial of this action, Baisch admitted liability pursuant to contractual stipulation that the Schneiders would not seek damages in excess of $50,000.00. Following the trial on the issue of damages, the trial court awarded the Schneiders damages in the amount of $50,000.00—awarding the estate of Margaret P. Schneider the sum of $41,666.67; Colleen Schneider the sum of $9,600.00, reduced to $8,333.33 by reason of the stipulated judgment limit; and did not award any damages to John Schneider.

It is Baisch's contention on appeal that the trial court's findings as to damages incurred by the estate of Margaret Schneider were induced by an erroneous view of the law awarding damages upon the normal life expectancy of a woman 56 years of age and not upon Margaret Schneider's actual survival lifetime, i. e., eleven months.

This court will not disturb findings made by a trial court unless they are clearly erroneous, either upon a clear demonstration that they are without substantial evidentiary support or that they are induced by an erroneous view of the law. Rule 52(a), N.D.R.Civ.P.; *Stee v. "L" Monte Industries, Inc.,* 247 N.W.2d 641, 644 (N.D. 1976); *Fine v. Fine,* 248 N.W.2d 838, 841 (N.D.1976).

In the instant case, it is evident that the trial court allowed recovery of damages on behalf of the estate of Margaret Schneider for a period longer than the time of her actual survival, even though the trial court failed to include the legal bases for its findings of damages in its conclusions of law. The trial court, in its memorandum opinion stated:

". . . But counsel for the defendant questions whether recovery can be had on behalf of Margaret Schneider for a period longer than the period of her survival. I conclude that she can, irrespective of her early death, for the reason that her cause of action arose immediately upon the death of her husband."

The trial court went on to state:

". . . In addition, were courts to consider happenings subsequent to wrongful death in arriving at awards, it would place conjecture upon and limit recovery in all cases of this kind, as well as in many other cases wherein recovery was sought based upon negligence."

Finally, the trial court stated:

"Even if the Court were to assume the more conservative posture, some evidence would have had to have been offered indicating a life expectancy of the spouse to be shorter than that of the calculated life expectancy of the decedent. Lacking this evidence, it must be assumed that Mrs. Schneider would have lived at least as long as her husband would have lived had he not suffered wrongful death. This being true, it is not necessary for the Court to calculate with any certainty the amount which Mrs. Schneider would have received had Henry Schneider lived out his life expectancy, since the amount which she would have received is far in excess of the $35,000 yet to be dealt in."

We find nothing in the trial court's findings of fact, conclusions of law, and order for judgment that would indicate, as counsel for the Schneiders urges, that the trial court abandoned this view of the law or that it played no part in the trial court's findings on damages incurred by the Schneiders.

■ North Dakota's death by wrongful act law, Chapter 32–21, N.D.C.C., awards damages to a restricted class of beneficiaries, based on the loss suffered by the beneficiaries, and not on the loss sustained by the decedent's estate. § 32–21–02, N.D.C.C. Thus, the probable contributions of the decedent to a beneficiary are the bases for a beneficiary's recovery. Although under such a statutory structure, the life expect-

ancy of both the decedent and the beneficiary are relevant factors, a beneficiary's recovery is limited to an award based on the life expectancy of the shorter of the decedent's or the beneficiary's life expectancy, because no contribution to the beneficiary can be presumed beyond the actuarial life expectancy of either the decedent or the beneficiary.

A special issue arises when the beneficiary dies prior to the trial of the action for death by wrongful act and the legal representative of the beneficiary's estate brings the action for the benefit of the beneficiary's estate pursuant to § 32–21–05, N.D.C.C. In such an instance, the element of speculation regarding the joint life expectancies of the decedent and the beneficiary is removed and damages may be awarded based on the period by which the beneficiary actually survived the decedent. From our perusal of the cases, annotations, and treatises addressing the question before this court, we conclude that under our death by wrongful act law, a beneficiary's recovery is limited to the beneficiary's actual period of survival under such circumstances. *Adams v. Sparacio,* 196 S.E.2d 647 (W.Va.1973); *Wakefield v. Government Employees Insurance Co.,* 253 So.2d 667 (La. App.1971), writ denied, 260 La. 286, 255 So.2d 771 (1972); Annot., 43 A.L.R.2d 1291 (1955); Annot., 13 A.L.R. 225 (1921); 1 Stuart M. Speiser, *Recovery for Wrongful Death,* § 8.21 (2d ed. 1975). Having determined that the findings of the trial court as to damages awarded were induced by an erroneous view of the law and being unable to determine the effect such error had on the trial court's award of damages to the Schneiders, we remand the case to the trial court for a new trial on the issues of damages to John Schneider, on his own behalf and as personal representative of the Estate of Margaret P. Schneider, his deceased mother, and Colleen Schneider.

Judgment reversed and case remanded for new trial on the issues of damages.

ERICKSTAD, C. J., and PEDERSON and SAND, JJ., concur.

VOGEL, Justice, dissenting.

I dissent.

The majority opinion holds that the damages due to a survivor in a wrongful-death action will be limited to the period of survival, provided the survivor dies before the wrongful-death action is tried.

The rule is supported by the weight of authority in other States. There are no cases in point in this State. The rule is wrong in principle and unfair in application. Decisions of other courts are often persuasive, but are not binding on us. If those decisions are unreasonable, we should not follow them. It is better to make good law than to import bad law.

Decisions from other States deserve respectful consideration, but to rely on them too much is to abandon our function of fixing the law of this State. In particular, we must integrate rules we adopt in new factual situations to the body of law we already have.

Dean Wigmore's classic analysis of the weight to be given to law of other jurisdictions is as valid today as when it was first written:

". . . a main supposed virtue of 'stare decisis' is the blessing of certainty in the law. Yet that blessing has obviously not descended upon us. And an important reason for this failure is the hodgepodge use by one State Court of the decisions of other State Courts. Except in a minority of States, the opinions are full of citations from other States. Those other States' decisions are not binding as precedents; their use tends to unsettle the law of the Court that resorts to them. To rely upon a ruling from another Court, not in the least binding, is of course to give a quality of optionalness in the use of precedents. And so the genuine doctrine of precedents is every day undermined by this loose resort to the law of other States. We possess all the drawbacks of having 'stare decisis', and also all the drawbacks of not having it." Wigmore on Evidence, Vol. I, § 8a, p. 245.

Wrongful-death-action damages are traditionally determined largely on the basis of life expectancy of the survivor and of the decedent, both determined as of the date of death of the decedent. This rule is found in our North Dakota Jury Instruction No. 830, which says that, in weighing the matter of pecuniary damages for wrongful death,

".  .  . you may consider the age of the decedent and of the Plaintiff, the state of health and physical condition of the decedent and of the Plaintiff *as it existed at the time of death and immediately prior thereto; . . ."* [Emphasis added.]

This, I believe, is the proper rule. The unfairness of the majority opinion's rule can be shown by a few illustrations.

First, suppose a young husband, age 25, with a wife about the same age and two small children, dies in an automobile accident due to the negligence of another. The wife can sue for wrongful death and collect damages for herself in her own behalf and in behalf of the children. The damages will be computed, in large part, on the basis of her expectancy of support and other pecuniary expectations from the continued survival of the husband. If she sues and recovers a judgment of, say, $100,000, and judgment is entered in that amount, and she dies the next day from accident or sudden disease, her children would inherit the $100,000. If she died a couple days earlier, before verdict and judgment, her damages would be limited, according to the majority opinion, to only the short period of time between the death of her husband and her own death. Why should the defendant have a windfall because of the fortuitous death of the survivor?

Another example: Suppose a middle-aged wife with a life expectancy of 25 years recovers a verdict of, say, $50,000 for the wrongful death of her husband, and suppose the wife's life expectancy and the husband's life expectancy were both 20 years. If the wife dies before judgment, her recovery, according to the majority's rule, would be limited to the short period of time between the death of the husband and the death of the wife. If, on the other hand, she survives not the 20 years of her life expectancy, but 40 years, she still is limited to the $50,000 judgment which was based in large part upon her life expectancy of 20 years. In other words, the defendant benefits if the survivor dies prematurely but pays nothing extra where the survivor outlives his or her life expectancy. The unfairness is obvious.

I suggest that the correct rule should be that damages for wrongful death are to be determined as of the date of death of the decedent, taking into account, along with all the other factors mentioned in the Pattern Jury Instructions on the subject, the life expectancy of the survivor, giving proper weight to the state of the survivor's health and physical condition at the time of the death of the decedent, and irrespective of events subsequent to the death of the decedent.

This is the rule, as I stated above, of North Dakota Jury Instruction 830, which has been repeatedly applied in the past in this State. That rule is based upon previous decisions of this court not involving the same question, but involving generally damages for wrongful death. Such cases include *Henke v. Peyerl*, 89 N.W.2d 1 (N.D. 1958); *Umphrey v. Deery*, 78 N.D. 211, 48 N.W.2d 897 (1951), and *Stejskal v. Darrow*, 55 N.D. 606, 215 N.W. 83 (1927).

If this rule were to be applied in this case, we should affirm the decision of the district court. I have examined with care the transcript of the testimony in this case, and the only evidence as to the health of the surviving wife as of the time of the husband's death may be summarized as follows:

On the date of the father's death, May 3, 1975, the mother had been diagnosed as having cancer. There was no testimony as to whether the cancer was considered curable or what her probable life expectancy was, aside from the evidence, not objected to, that statistical mortality tables showed that females had a life expectancy, at 55 years of age, of 19.71 years. She had just gotten out of the hospital the day before her husband died, and had received cobalt treatments. She knew she was not capable

of working and she was not capable of driving an automobile from her rural home to town. At some time in the past she had had back surgery, and her husband had changed the plans for the house he was building so as to make it a ground-level home rather than a split-level home. When the husband died, she was taken from the house, where the heating system was inadequate, because she was so weak she could very easily have contracted pneumonia. The daughter testified that the mother needed quite a bit of assistance at home at the time of the father's death.

The foregoing is a complete statement of the evidence in the transcript as to the mother's health and life expectancy at the time of death of the father. It is my opinion that all of this evidence, taken together, indicates a more-than-sufficient life expectancy to justify the damages awarded by the trial court. There was no evidence that her cancer was terminal or that her life expectancy was less than that of other women of the same age.

The trial judge, in trying this case without a jury, had the right and the duty to consider all the factors which a jury might consider. According to our Pattern Jury Instructions, those factors included the state of health of the mother at the time of the husband's death. They did *not* include any events subsequent to the husband's death.

Such subsequent events have no bearing upon the computation of damages, which are to be determined as of a specific date. In this case, that specific date is the date of death of the decedent-husband. The subsequent death of the mother is of no more relevancy than many another future event. It is certainly no more relevant than the prospective or actual future marriage of a survivor, and courts almost unanimously hold that the actual or prospective marriage of a survivor is properly kept from a jury. Annot., 87 A.L.R.2d 257, § 4; *Cherrigan v. City and County of San Francisco,* 262 Cal. App.2d 643, 69 Cal.Rptr. 42 (1968); *Bunda v. Hardwick,* 376 Mich. 640, 138 N.W.2d 305 (1966)[1]; *Hightower v. Dr. Pepper Bottling Co. of Shreveport,* 117 So.2d 642 (La.App. 1960).

While this rule as to remarriage is most often said to be based upon the speculative nature of the benefits to be derived from a second marriage (a reason which does not apply to the death of a surviving spouse), it is sometimes based upon the same reason I stated above for dissenting in the present case—the prospect of undue profit to the defendant [*Cherrigan v. City and County of San Francisco, supra,* and *Benwell v. Dean,* 249 Cal.App.2d 345, 57 Cal.Rptr. 394 (1967)].

In my opinion, the rule should be the same as to the subsequent death of a survivor in a wrongful-death action, and I would affirm the judgment of the trial court.

---

1. In the Michigan case, the remarriage occurred eight days after judgment.