[Civ. No. 21101.   First Dist., Div. Two.   May 15, 1964.]

MARY M. BENWELL, Plaintiff and Respondent, v. WILLIAM T. DEAN, Defendant and Appellant.

Berry, Davis, Lewis & McInerney and Samuel H. Berry for Defendant and Appellant.

J. Adrian Palmquist and Francis T. Cornish for Plaintiff and Respondent.

TAYLOR, J.—Respondent, Mary M. Benwell, filed this action for damages for the wrongful death of her husband Thomas, who was killed by a heavy steel beam that fell on him as the result of a collision with an automobile driven by appellant, William T. Dean. Following a jury verdict for appellant, the court granted the respondent's motion for a new trial on grounds of errors of law. On this appeal from the order granting the new trial, the issues are the propriety of the court's instructions to the jury and rulings on the admission of evidence.

The pertinent facts are as follows: On March 18, 1959, around 11 a.m., appellant, a 72-year-old carpenter, accompanied by his son Stanley, was on his way to lunch at 35th Street and Telegraph Avenue in Oakland. He was driving his 1954 Oldsmobile in the eastbound lane on 35th Street, between Grove Street and Telegraph Avenue, an area being cleared for the expansion of the MacArthur Freeway. He was looking for a parking space as his car approached Telegraph Avenue. There was no other traffic on 35th Street, no cars were parked at the curb, and the weather was clear and bright. At that time, 35th Street was a two-lane street, about 32½ feet wide and the block between Grove and Telegraph was an unusually long one of about 1,000 feet.

The deceased, Thomas Benwell, was employed by Ayen House Movers, who on the day in question were planning to remove the last building remaining on 35th Street, an apartment house on the north side of the street, approximately 960 feet east of Grove Street. Earlier that morning, Benwell had driven to the site in his employer's large truck with two 65-foot steel ''I'' beams, each weighing over 9,000 pounds. His coworker Mr. Thomas drove a winch truck and Mr. Ayen a pickup truck. All three of these vehicles were parked in the vacant lot on the south side of the street opposite the apartment house. The steel beams had been placed on the ground. The level of the lot was about 6 inches higher than that of the street.

In preparation for moving the ''I'' beam from the lot across the street and under the apartment house, Ayen, Ben-

well and Thomas had placed several "cribs" or frame constructions. Each was built of 2 by 4 planks and was about 21 inches high. Several 6 by 6 blocks were put on top of the crib and rollers added to the blocks so that the total height of each crib was about 45-51 inches. One crib was placed in the middle of 35th Street; another on the lot several feet from the sidewalk; and the third about 50 feet from the sidewalk.

At a little before 11 a.m., Benwell, Ayen and Thomas (all of whom were experienced house movers) began to lift one of the "I" beams with a cable attached to a winch truck. Ayen, who was stationed on the sidewalk near the front (north) end of the beam, directed the entire operation by appropriate whistles to Thomas who operated the cable from the cab of the winch truck. The winch truck was parked parallel to 35th Street, facing west towards Grove Street; the pickup truck was parked nearby. Benwell attached the winch cable to the beam and had the responsibility of seeing that the beam moved smoothly along the rollers on the crib located farthest from the sidewalk. Benwell was standing near the pickup truck west of the beam, and about 20 feet north of its rear (south) end.

The winch truck had five gears, but the beam could be lifted only with the lowest one. Thomas stopped the beam several times in moving it from its original position before the accident occurred. The beam in its north-south position had been moved about 20 feet and was slowly being moved across 35th Street at the time of the accident. He did not know whether it was still or moving at the time of the impact, but he stopped it immediately thereafter.

Thomas testified that when the north end of the beam extended about 6 feet into the eastbound lane of 35th Street, the appellant's car approached at a speed of about 35-40 miles an hour and drove into it. As a result, the beam was knocked off the rollers. The north end of the beam moved eastward and knocked Ayen down. The south end moved westward, fell on Benwell and pinned him against the pickup truck. Benwell was taken to the hospital and died shortly as a result of the injuries sustained in the accident.

When appellant was about 600-800 feet away, he first saw what he thought was a barricade in the middle of 35th Street. Later he thought it was something covering a manhole and anticipated no difficulty as he intended to pass to the right of the crib. When he was about 75 feet away, his attention was diverted by a crane and several men standing in the vacant lot on his right. There were no barricades or warning

signs of any kind in the area. Appellant continued to watch the men and equipment on his right and looked in that direction [south] until the accident occurred.

Just as appellant prepared to drive around the crib, his son yelled ''Duck'' and at that instant the car was struck by the beam. Appellant was not aware of the beam before his son's warning. The beam smashed the windshield and peeled off the roof of the car. The impact sprung open the left front door of the car, threw appellant into the street and moved the car over 200 feet. Appellant's son who had ducked under the dashboard stopped the car about 50 feet from the point of impact directly opposite the apartment house and about 690 feet east of the east curbline of Grove Street.

■ On appeal, every presumption is in favor of an order granting a new trial and against the judgment. ■ The burden of showing a manifest abuse of discretion by the trial court in granting the new trial is on the appellant (*Vanni* v. *Burns,* 179 Cal.App.2d 58 [3 Cal.Rptr. 487]). As the order for the new trial here was based on errors of law, we must conclusively presume that it was not based on insufficiency of the evidence to support a verdict for the defendant (Code Civ. Proc., § 657). Yet, we must briefly note the sufficiency of the evidence, as in the absence of any evidence to support a judgment in favor of the moving party, the order must be reversed as a matter of law (*Brandelius* v. *City & County of San Francisco,* 47 Cal.2d 729, 733 [306 P.2d 432]).

The facts clearly demonstrate that, viewing the record most favorably to the respondent, the jury could conclude that the accident was caused by appellant's rate of speed and failure to look where he was driving and thus, there is substantial evidence to support a judgment in favor of respondent. We turn, therefore, to the various errors of law in the rulings on the admission of evidence and the instructions to the jury. ■ If there was any prejudicial error committed at the trial, whether or not assigned as a reason for the granting of the new trial, the order must be affirmed (*Barth* v. *San Juan Development Co.,* 168 Cal.App.2d 760, 762 [336 P.2d 203]).

### Assumption of Risk

■ The record reveals that at the request of appellant, the trial court extensively instructed the jury on the doctrine of assumption of risk. This was prejudicial error. ■ Such instructions are proper only where there is actual knowl-

edge of the particular risk and an appreciation of the danger involved. These are independent and essential elements of the doctrine (*Shahinian* v. *McCormick,* 59 Cal.2d 554 [30 Cal.Rptr. 521, 381 P.2d 377]).

Benwell was working in the lot adjacent to the street. Even if it could be reasonably inferred because of his presence in the immediate vicinity and his participation in the small-scale house moving project that he knew the employer Ayen had not performed his duty and taken proper steps to warn approaching motorists, he obviously could not have known that appellant would be driving east on 35th Street at a speed of 35 miles per hour oblivious of the obstruction in the street in broad daylight and with his eyes fixed on the activity in the lot. It was not sufficient to show that Benwell had failed to exercise due care for his own safety. He must have been thoroughly aware of the specific danger confronting him and voluntarily assumed the risks (*Vierra* v. *Fifth Avenue Rental Service,* 60 Cal.2d 266, 271 [32 Cal.Rptr. 193, 383 P.2d 777]). The danger here involved was separate and distinct from the general danger which would be recognized by one working with heavy steel beams.

## CONTRIBUTORY NEGLIGENCE

Respondent argues that there was no contributory negligence as a matter of law and that the court erred in instructing the jury thereon. Where the evidence on the issue of contributory negligence is conflicting and would support a finding either way, the question is one of fact and not of law, and must be decided by the trier of fact (*Miller* v. *Western Pac. R.R. Co.,* 207 Cal.App.2d 581, 592 [24 Cal. Rptr. 785]). If on a consideration of the evidence in the light most favorable to appellant, the record reveals some evidence of contributory negligence, however slight, the giving of the instruction is not erroneous (*Maynard* v. *Walker,* 175 Cal.App.2d 145, 148 [345 P.2d 478]).

Although Benwell was entitled to a presumption of due care (*Brandelius* v. *City & County of San Francisco, supra*) and the employer owed him a duty to provide a safe place to work (Lab. Code, §§ 6400-6404), yet if from the evidence it can be reasonably inferred that he was actually aware that adequate safeguards had not been taken to warn motorists of the street obstruction, an instruction on contributory negligence may be proper (*Buckley* v. *Chadwick,* 45 Cal.2d 183 [288 P.2d 12, 289 P.2d 242]). Because of reversible error in other instructions, we are not required to determine this

issue. However, the fact that Benwell was an experienced house mover involved in a single project within a small area with only two other persons would lend some support to such a deduction. Perhaps on retrial the question will be further explored. If the trial judge does conclude that a contributory negligence instruction is justified by the evidence, the jury should, of course, be cautioned that the contributory negligence, if any, of the deceased is not a bar to respondent's recovery unless it was also a proximate cause of the accident (*Perrotti* v. *Sampson,* 163 Cal.App.2d 280 [329 P.2d 310]).

### STANDARD OF CARE

■ We turn next to the instructions on the duty of care. The trial court instructed the jury as follows: "When a person's lawful employment requires that he work in a dangerous location or a place that involves unusual possibilities of injury, or requires that in the line of his duty he take risks which ordinarily a reasonably prudent person would avoid, the necessities of such a situation insofar as they limit the caution that he can take for his own safety, lessen the amount of caution required of him by law in the exercise of ordinary care."

■ "Because of the danger involved in the handling of the large steel beam, a person of ordinary prudence will exercise extreme caution when engaged in such an activity. Hence, it is the duty of anyone engaged in such an operation or participating in such an activity to exercise extreme caution."

Aside from the conflict between these two instructions which undoubtedly confused the jury as the higher amount of care required in the second nullifies the lesser amount in the first, the instruction charging Benwell with a duty of extreme caution was erroneous and prejudicial. The authorities which require the giving of an extreme caution instruction indicate that it is proper only in situations where the nature of the activity or substance is so inherently dangerous or complex, as such, that the hazard persists despite the exercise of ordinary care (*Borenkraut* v. *Whitten,* 56 Cal.2d 538, 545 [15 Cal.Rptr. 635, 364 P.2d 467]; *Jensen* v. *Minard,* 44 Cal.2d 325 [282 P.2d 7]; *Austin* v. *Riverside Portland Cement Co.,* 44 Cal.2d 225 [282 P.2d 69]; *Kingery* v. *Southern Cal. Edison Co.,* 190 Cal.App.2d 625 [12 Cal.Rptr. 173]). ■ The moving of a steel beam across the street, like many other activ-

ities in our complex and highly mechanized society, is dangerous when not done properly. It is not, however, such an inherently hazardous activity that even a slight deviation from standards of care constitutes negligence (*Borenkraut* v. *Whitten, supra*).

We think that an instruction along the lines of the first instruction above, relating to employment involving unusual possibilities of injury may be properly given. In *Fry* v. *Sheedy*, 143 Cal.App.2d 615, 627 [300 P.2d 242], we held that the failure to give the lesser amount of care instruction in defining the caution one must exercise for his own safety constituted prejudicial error in a case where the plaintiff employee was injured by a steel fence post which was being removed by a crane. The care to be exercised by a person of ordinary prudence varies with the condition under which he is called upon to act (*Scott* v. *Mackey*, 159 Cal.App.2d 690, 698 [324 P.2d 703]).

### OAKLAND MUNICIPAL CODE

Over the objections of the respondent, the court admitted into evidence section 6-2.60 of the Oakland Municipal Code which provided: "No person, firm or corporation shall place or cause to be placed on any public street, or any portion thereof, in the City of Oakland, any materials or appliances for use in the construction, alteration or repair of a building of any kind, or for any other purpose necessitating temporary occupancy of any portion of the public street, without first obtaining a permit therefor from the Superintendent of Streets of said City of Oakland. Such materials and appliances shall not occupy more than one third of the width of the roadway of the street, and not more than one half of the width of the sidewalk, and shall be placed thereon under the direction and to the satisfaction of the Superintendent of Streets."

It is uncontroverted that Ayen House Movers did not obtain a permit of any kind from the city until after the accident. Respondent argues that the ordinance should not have been admitted because the city had abandoned 35th Street to the state after the signing of the freeway agreement. However, the evidence indicates that even though traffic was light, the street was still in use and the Oakland police were still exercising their duties thereon. The only reasonable interpretation of the freeway agreement is that 35th Street was not abandoned by the city until it was closed to public use.

Respondent, relying on *Moon* v. *Payne,* 97 Cal.App.2d 717 [218 P.2d 550]; *Strandt* v. *Cannon,* 29 Cal.App.2d 509 [85 P.2d 160]; *Bryant* v. *Tulare Ice Co.,* 125 Cal.App.2d 566 [270 P.2d 880] and *Wysock* v. *Borchers Bros.,* 104 Cal.App. 2d 571 [232 P.2d 531, 29 A.L.R.2d 948], argues that the ordinance was improperly admitted as there is no evidence in the record of any causal relation between the failure of Benwell's employer to obtain a permit and the accident. We do not agree. In the instant case, the obvious purpose of the ordinance was to provide for proper safeguards and warnings to the public whenever public streets are obstructed. Where the purpose of requiring a permit is to protect against the event which causes the loss, a violation of the ordinance constitutes negligence. Whether the violation of the ordinance proximately contributed to the accident was a question of fact for the jury (*Satterlee* v. *Orange Glenn School Dist.,* 29 Cal.2d 581, 590 [177 P.2d 279]; *Reid & Sibell* v. *Gilmore & Edwards Co.,* 134 Cal.App. 2d 60 [285 P.2d 364]). We hold that the ordinance was properly admitted for the limited purpose of enabling the jury to determine whether the negligence of the deceased's employer was the sole proximate cause of the accident.

However, the court failed to remind the jury of the limited application of the ordinance in its instructions. After quoting the ordinance, the court quoted the provisions of the basic speed law and then immediately told the jury: "If any person violated any of the laws just read to you, a presumption arises such person was negligent." The juxtaposition of the Vehicle Code provision applicable only to the appellant and the ordinance, applicable only to Benwell's employer and for a very limited purpose, was confusing. The jury should have been instructed that the ordinance was to be considered only in relation to the question of Ayen's negligence as the sole proximate cause of the accident and cautioned that if the negligence of both Ayen and the appellant proximately caused the accident, the appellant was not relieved of liability.

EVIDENCE CONCERNING THE WARNING TO AYEN

Police Officer J. J. Borges testified that during a conversation with Ayen before the accident at which Benwell was not present, he had warned Ayen as to what he should do to protect the public when the moving of the house began. This evidence likewise was properly admissible only for the

limited purpose of establishing Ayen's negligence as the sole proximate cause of the accident. The record shows that the respondent properly raised a hearsay objection but the court failed to caution the jury as to the limited purpose of the evidence at the time of admission and in its instructions. As there can be no question concerning the hearsay nature of the evidence (Code Civ. Proc., § 1845) as far as Benwell is concerned, these errors can be corrected on retrial by proper instructions.

Order granting new trial affirmed.

Shoemaker, P. J., and Agee, J., concurred.

A petition for a rehearing was denied June 3, 1964.