[Civ. No. 22858. First Dist., Div. One. Mar. 10, 1967.]

MARY M. BENWELL, Plaintiff and Respondent, v. WILLIAM T. DEAN, Defendant and Appellant; VIRGIL AYEN et al., Claimants and Appellants.

Berry, Davis, Lewis & McInerney and Cyril Viadro for Defendant and Appellant.

Donald J. O'Neill for Claimants and Appellants.

J. Adrian Palmquist and James L. O'Dea for Plaintiff and Respondent.

MOLINARI, P. J.—In this wrongful death action the questions presented on appeal are as follows: (1) whether it was error to reject defendant's offer of proof that deceased, shortly before his death, had told a witness that he (the deceased) intended to leave his wife (the plaintiff), and that he could not stand her behavior; (2) whether the trial court erred in refusing to permit defendant to inquire into plaintiff's new married name and marital status; (3) whether plaintiff failed to prove her damages; (4) whether the trial court erred in permitting plaintiff to call and cross-examine her deceased husband's employer; and (5) whether it was error to bar the workmen's compensation lien of decedent's employers and insurance carrier (hereinafter called lien-claimants).[1]

---

[1] We need not set out the facts of the accident since these are not in dispute nor pertinent to the questions presented. A narrative of the pertinent facts will be found in *Benwell* v. *Dean*, 227 Cal.App.2d 226 [38 Cal.Rptr. 542], affirming an order granting a new trial following a jury verdict for defendant in a previous trial. The present trial resulted in a judgment upon a jury verdict for plaintiff, the deceased's surviving wife, in the sum of $60,000 from which the trial court deducted the sum

## Evidence of Deceased's Intention to Leave His Wife

In the course of the trial, defendant offered to show, through the testimony of a Mrs. Rossi, former wife of one of deceased's employers, that the deceased, shortly before his death, had asserted to the witness that he was getting ready to leave plaintiff and that he could not stand her behavior. The offer of proof was rejected by the court on the ground that it was "inadmissible hearsay."

Defendant urges that the offered testimony was admissible either under the state of mind exception to the hearsay rule or as circumstantial evidence tending to prove that the deceased did not feel toward plaintiff as warmly as she testified that he did. In the instant case, in the course of her case in chief, plaintiff testified as to the warmth of the feelings between her and her husband;[2] these feelings were commented upon by her counsel in his argument to the jury; and, finally, instructions were given by the trial court advising the jury that, in determining pecuniary loss, they could consider "the value of

---

of \$12,447.25 in workmen's compensation benefits paid said plaintiff, following the granting of defendant tortfeasor's motion for an order barring the workmen's compensation lien of the decedent's employers and their insurance carrier. Defendant appeals from the judgment and the lien-claimants appeal from the order barring the lien.

[2]Plaintiff's entire testimony was brief. In addition to testifying that she and decedent had been married about eleven months; that he was 41 years of age and she 37 at the time of his death; that he was a strong, hardworking man, and a steady worker; that he earned between five and six hundred dollars per month; and that she and he shared pleasures and hobbies, plaintiff testified as follows:

"Q. And was your relationship, may I ask you, ma'am, one of warmth and closeness or something else?

"A. Very much so, very close.

"Q. Was your marriage to Mr. Benwell punctuated by arguments and disputes or not?

"A. No.

"Q. Got along well?

"A. Very well, yes.

"Q. Did you or did you not rely on Mr. Benwell for advice on problems that you had?

"A. Oh, yes, although with him I had no problems.

"Q. Uh-huh. And were decisions during your married life made by you or with consultation and discussion with him or not?

"A. Oh, together. We made all decisions together.

"Q. Was Mr. Benwell an affectionate man or not?

"A. Very much so.

"Q. You didn't see him before he died, did you?

"A Yes, I did, at the hospital, just momentarily.

"Q. Oh. Well, were you able to tell if he was—

"A. Well, he spoke, just told me he loved me, and I told him I loved him, and they chased me out of the room, or took me out, and in not too long, they came and told me he was dead."

the society, comfort, care, protection . . . which plaintiff has lost by reason of the death . . . ,'' and that they could also consider ''whether the disposition of the deceased was kindly, affectionate or otherwise. . . .'' Since the deceased's feelings toward her were placed in issue by plaintiff, says defendant, he should have been afforded the opportunity of countering and rebutting her testimony that the marriage was a happy one by means of the proffered evidence. The thesis of defendant's argument is that since the feelings between plaintiff and her deceased husband were at issue in the determination of the amount of damages to which plaintiff was entitled, and that since such damages included the elements of loss of society, comfort, care and protection, evidence of the lack of these elements was admissible.

Before proceeding to discuss this contention we note that the statutory and exclusive measure of damages in actions for wrongful death is that embodied in Code of Civil Procedure section 377, which is ''such damages . . . as under all the circumstances . . . may be just.'' (*Bond* v. *United Railroads,* 159 Cal. 270, 276 [113 P. 366, Ann. Cas. 1912C 50, 18 L.R.A.N.S. 687] ; *Duclos* v. *Tashjian,* 32 Cal.App.2d 444, 453 [90 P.2d 140].) Damages under the provisions of this section ''are measured by the financial benefits the heirs were receiving at the time of death, those reasonably to be expected in the future, and the monetary equivalent of loss of comfort, society and protection'' (*Stathos* v. *Lemich,* 213 Cal.App.2d 52, 56 [28 Cal.Rptr. 462]) ; as, stated in *Cervantes* v. *Maco Gas Co.,* 177 Cal.App.2d 246 [2 Cal.Rptr. 75], such damages are ''what the heirs received at the time of the death of the decedent and what the heirs would have received had the decedent lived.'' (P. 251.) With respect to the loss of comfort, society and protection, this element of pecuniary loss recoverable under section 377 has an actual value which cannot be compensated for by merely nominal damages. (*Griott* v. *Gamblin,* 194 Cal.App.2d 577, 579 [15 Cal.Rptr. 228] ; *Duclos* v. *Tashjian, supra.*)

██ It is well established in this state, moreover, that evidence of the nature of the personal relationship that existed between the decedent and the beneficiaries of a wrongful death action has a bearing on the compensation for loss of society, comfort and protection, and is therefore ordinarily admissible in such an action. (*Beeson* v. *Green Mountain Gold Min. Co.,* 57 Cal. 20, 38 [social and domestic relations of parties and their kindly demeanor toward each other] ; *Cook*

v. *Clay Street Hill R.R. Co.*, 60 Cal. 604, 609 ["happily married life"; decedent was "kind and attentive" and "kind and loving"]; *Carroll* v. *Central Counties Gas Co.*, 96 Cal.App. 161, 164 [273 P. 875] [attitude of decedent towards beneficiary and that decedent was "industrious and affectionate"]; *Kramm* v. *Stockton Elec. R.R. Co.*, 22 Cal.App. 737, 757 [136 P. 523] [decedent was "kind and loving"]; 55 Cal.Jur.2d Wrongful Death, § 70, p. 480.) These decisions make it readily apparent that if it is proper for the beneficiary to produce evidence of the attitude and affection on the part of the decedent for the beneficiaries that then defendant should properly be able to rebut or negate such evidence.

Of particular interest to the discussion at hand are the cases of *Luis* v. *Cavin*, 88 Cal.App.2d 107, 119 [198 P.2d 563] and *Powers* v. *Sutherland Auto Stage Co.*, 190 Cal. 487, 489, 491 [213 P. 494].) In *Cavin* it was held that loss of comfort, society and protection could be an item of damages in a wrongful death action brought by a decedent's widow who before his death had lived separate and apart from him under an interlocutory decree of divorce, where there was evidence that the parties had discussed reconciliation and there was evidence of possible future reconciliation. In *Powers*, the decedent and his wife had been living separate and apart, although not legally separated or divorced, for over 13 years, the decedent having deserted his wife and abandoned all contact with her and she not knowing of his whereabouts. It was held that the wife could not recover for loss of his society, comfort and protection although she could recover damages on the basis of the pecuniary loss suffered by her legally enforceable right of support.

Adverting to the proffered evidence in the instant case, we note that if it was admissible at all, it was admissible to show deceased's mental state and not to prove that deceased was going to leave plaintiff as a matter of fact or to prove any acts of misconduct on the part of plaintiff. It is established in California that a statement of memory or belief may not be used to prove the fact remembered or believed. (See *Estate of Anderson*, 185 Cal. 700, pp. 719-720 [198 P. 407]; *Adkins* v. *Brett*, 184 Cal. 252, 256 [193 P. 251].)[3]

---

[3] The principle, developed in the California cases, finds embodiment in § 1250, subd. (b) of the new Cal. Evid. Code which provides: "This section does not make admissible evidence of a statement of memory or belief to prove the fact remembered or believed." (See Comment to Evid. Code, § 1250.)

The admissibility of statements or declarations indicative of the mental state of the declarant embraces two theories: If the statements do not directly declare a mental or emotional state, but are merely circumstantial evidence thereof, they are not hearsay; but if they are declarations of a mental condition, which directly asserts it, they are hearsay. (See Witkin, Cal. Evidence (2d ed. 1966) § 556, pp. 530-531; 6 Wigmore, § 1715; McCormick, Evidence, p. 567; 19 Cal.L. Rev. 245, 248; and see Evid. Code, § 1250, Comment.) In the latter instance, evidence of a certain person's declarations at a particular time indicative of his then mental state, even though hearsay, are competent as within an exception to the hearsay rule when the intention, feelings or other mental state of that person at said time, including his bodily feelings, are material to the issues under trial. (*Adkins* v. *Brett, supra,* p. 255; *Estate of Anderson, supra,* pp. 718-719; *Whitlow* v. *Durst,* 20 Cal.2d 523, 524 [127 P.2d 530]; *Watenpaugh* v. *State Teachers' Retirement System,* 51 Cal.2d 675, 679-680 [336 P.2d 165]; *People* v. *Hamilton,* 55 Cal.2d 881, 893-900 [13 Cal.Rptr. 649, 362 P.2d 473]; see 6 Wigmore, § 1730; Witkin, *supra,* § 557, p. 531.)[4]

Since declarations indicative of the declarant's mental state at the very time of their utterance are only competent to show that mental state, they are not admissible unless his mental state is material to the issue under investigation. Accordingly, even though such declarations do show the declarant's mental state at the time of their utterance, they are not competent for that purpose unless that purpose is germane to the issue. (*Estate of Anderson, supra,* p. 718.) In the present case the subject declaration would be admissible under the dual theories above mentioned, provided it was relevant to an issue under trial in the instant case, because it was circumstantial evidence of deceased's feelings toward plaintiff ("he was getting ready to leave plaintiff") and as a direct declaration of his mental state ("he could not stand her behavior"). (See *People* v. *Brust,* 47 Cal.2d 776, 785 [306 P.2d 480].)

Defendant relies essentially upon *Adkins* v. *Brett, supra;* *Whitlow* v. *Durst, supra,* and *Loetsch* v. *New York City Omnibus Corp.,* 291 N.Y. 308 [52 N.E.2d 448]. In *Adkins,* a husband brought an action for alienation of his wife's affections. In the course of the trial the plaintiff-husband was permitted to testify as to a conversation with his wife the import

---

[4]This rule now finds embodiment in § 1250 of the new Cal. Evid. Code which became effective on January 1, 1967.

of which was that she had received flowers and other favors from the defendant, that she intended to continue to accept the defendant's attentions and the plaintiff could do what he pleased about it, and that plaintiff was distasteful to her. The reviewing court held this evidence relevant and admissible to show the wife's state of mind or feelings toward plaintiff since such was an issue in the action, but that it was prejudicial to admit such evidence without qualifying instructions that the jury was not to consider such evidence as proof of the matters narrated, but only for the purpose of showing the feelings of the wife.[5]

In *Whitlow,* a declaration by a husband, since deceased, made shortly after the date his wife testified that they had become reconciled, that he and his wife were still separated and would never become reconciled was held admissible as bearing upon the husband's state of mind and the probability of such reconciliation. The *Whitlow* case relies, in part, upon *Estate of Clover,* 179 Cal. 313 [176 P. 452], where declarations of a husband, since deceased, made prior to a reconciliation alleged to have occurred by his wife, to the effect that he did not want to have anything to do with her, and that she was bothering him the same as she did before they were married, were held admissible to show the attitude of the deceased and the improbability of reconciliation. (See also *Estate of Walker,* 176 Cal. 402, 414 [168 P. 689].)

*Loetsch* involved a suit by a husband to recover damages for the wrongful death of his wife. Statements made in the decedent wife's will executed within four months prior to her death to the effect that her husband had reciprocated her tender affections with acts of cruelty and indifference, and that he had failed to support her were held admissible by the appellate court as evidence of the decedent's state of mind and as "probative of a disposition on the part of the declarant which has a very vital bearing upon the reasonable expectancy, or lack of it, of future assistance or support if life continues." (P. 449.) The reviewing court, noting that this expectancy, disappointed by death, is the basis of recovery and is the measure of pecuniary loss for which the jury must award damages, and noting, further, that the declaration of the decedent was "compelling evidence of her feelings toward,

---

[5]Witkin, in his work on California Evidence, notes that the declaration by the wife that her husband was distasteful to her was a direct declaration of mental state within the hearsay exception and that the declarations with respect to her acts and the defendant's acts were circumstantial evidence of that mental state. (2d ed. § 556, p. 531.)

and relations to, her husband," stated as follows: "It is always proper to make proof of the relations of the decedent to the person for whose benefit the action is maintained, because such proof has a bearing upon the pecuniary loss suffered by the person entitled to the recovery, and this is true whether the beneficiary is the surviving husband or wife or one or more of the next of kin." (P. 449.)

The *Loetsch* case relies upon *Peterson* v. *Pete-Erickson Co.*, 186 Minn. 583 [244 N.W. 68], where a husband brought an action for the wrongful death of his wife. There a friend of the deceased wife gave testimony to a conversation wherein the wife referred complainingly to her husband's drinking and indicating that she was considering a possible divorce. These declarations were held to be competent evidence to show the character of the relation between husband and wife.

Adverting to the instant case in the light of the rationale in *Adkins, Whitlow, Loetsch* and *Peterson,* we are persuaded that plaintiff, by seeking damages for pecuniary loss resulting by reason of her husband's death, tendered an issue as to the relationship between plaintiff and deceased. That issue not only encompassed the expectancy, or lack of it, of the future assistance or support by deceased had his life continued, but also the loss of his comfort, society and protection. By offering evidence of the warmth of his feelings towards her and the closeness of the relationship between them she tendered an issue as to the existence of such feelings and relationship. Accordingly, the state of the affections between plaintiff and deceased, bearing on the question as to whether plaintiff lost the comfort and society of the deceased, was in issue. The declarations of deceased made to Mrs. Rossi as to his attitude and feelings towards plaintiff were relevant to this issue since such conversations were indicative of deceased's feelings and attitude at the time they were uttered. Our inquiry, therefore, is whether, although the court was in error in excluding the statements on the basis that they were inadmissible hearsay, it committed prejudicial error in excluding them.

In *Estate of Anderson, supra,* it was held that where the true evidentiary bearing of the evidence of a person's state of mind is at best slight and remote but is of such a nature as to make it very prejudicial to the party against whom it is offered, the evidence should be excluded. In *Adkins, supra,* this principle was stated thusly: "The matter is largely one

of discretion on the part of the trial judge. If the point to prove which the evidence is competent can just as well be proven by other evidence, or if the evidence is of but slight weight or importance upon that point, the trial judge might well be justified in excluding it entirely, because of its prejudicial and dangerous character as to other points.'' (Pp. 258-259.) In *People* v. *Hamilton, supra,* pp. 894-895, the Supreme Court approved and reiterated this rule as declared in *Estate of Anderson,* and noted moreover that ''. . . while declarations directly asserting the existence of a mental condition on the part of the decedent-declarant, and not including a description of the past conduct of a third person that may have caused that mental condition, are and should be admissible, they should be admitted only where there is at least circumstantial evidence that they are probably trustworthy and credible.'' (See *People* v. *Brust, supra,* p. 785; 5 Wigmore, p. 202, § 1420; and see *People* v. *Dalton,* 201 Cal.App.2d 396, 404-405 [20 Cal.Rptr. 51, 95 A.L.R.2d 628].) In *Hamilton,* it was noted further, as an additional reason for declaring the declarations there under consideration as inadmissible, that where the declarations refer to the past acts of the person against whom they are offered ''it is impossible for the jury to separate the state of mind of the declarant from the truth of the facts contained in the declarations, and that for such reasons such declarations are inadmissible.'' (P. 895.)

In the present case the true evidentiary bearing of the subject declarations was at best slight and remote, yet of a nature as to make them very prejudicial against plaintiff. The record is devoid of any other evidence at all that decedent contemplated leaving plaintiff. To the contrary the record discloses that he did not leave plaintiff and that at the time of his death they were living together. The record is also devoid of any evidence of plaintiff's misconduct during her marriage to decedent. Moreover, plaintiff was not cross-examined as to any of these matters. Since the only evidence touching upon these matters is that contained in the subject declarations, which can only go to decedent's state of mind, it is apparent that such declarations could be highly prejudicial to plaintiff. The jury could draw inferences, which would be no more than conjecture or speculation, that decedent, had he lived, would have left plaintiff and that her behavior was less than exemplary. The sole probative value of the declaration would be that on one occasion during the marriage the decedent made a statement which was inconsistent with the emotional state of

affection for his wife. Such probative value, in the absence of other evidence, is outweighed, we believe, by its prejudicial effect. Moreover, the trial judge was justified in considering the trustworthiness and credibility of such declarations in view of Mrs. Rossi's obvious hostility towards plaintiff, there being no circumstantial evidence that the declarations were probably trustworthy and credible.[6]

The same considerations lead to the conclusion that the error, if any, in excluding the declarations was not prejudicial. As pointed out above such evidence, if admitted, could only establish that on one occasion during the marriage decedent made a statement to his employer's wife showing a mental state inconsistent with marital bliss. In the absence of any direct or other circumstantial evidence of strained relations between plaintiff and decedent, it is not reasonably probable that a result more favorable to defendant would have been reached if the sole legitimate probative value of the offered declaration had been before the jury. (*People* v. *Watson*, 46 Cal.2d 818, 834-838 [299 P.2d 243]; Cal. Const., art. VI, § 13, formerly § 4½.)

### Evidence of Plaintiff's Remarriage

Defendant was denied the right to cross-examine plaintiff as to whether she had remarried and as to her new married name. Defendant urges that such evidence should have been admitted, presumably in mitigation of damages. His reliance is essentially upon the case of *Jensen* v. *Heritage Mutual Ins. Co.*, 23 Wis.2d 344 [127 N.W.2d 228]. This case stands for the authority that possibility of marriage or remarriage is always an element which is proper for the jury to consider in determining damages in a wrongful death action, and that when a remarriage has occurred by the time of trial, the jury should be permitted to consider such fact in assessing damages. This rule represents the minority rule in this country and is not in accord with the California rule. The majority rule is that the surviving spouse's remarriage, or the possibility thereof, does not affect the damages recoverable in an action for wrongful death of the deceased spouse. (See 87 A.L.R.2d 252, p. 253.) The rationale underlying the majority rule, with which California is in accord (see *Wood* v. *Alves Service Transportation, Inc.*, 191 Cal.App.2d 723, 727-729 [13

---

[6]Mrs. Rossi testified that Virgil Ayen, from whom she was then divorced, had, after decedent's death and prior to her separation from Ayen, been ''very attentive'' to plaintiff.

Cal.Rptr. 114] ; *Cervantes* v. *Maco Gas Co.*, *supra*, p. 252), is that the cause of action arises at the time of decedent's death and the damages are determinable as of the same time, and that the rule providing for mitigation of damages on account of the surviving spouse's remarriage is highly speculative, because it involves a comparison of the prospective earnings, services, and contributions of the deceased spouse with those of the new spouse. (See 87 A.L.R.2d, *supra*; *Cervantes* v. *Maco Gas Co.*, *supra*; *Wood* v. *Alves Service Transportation Inc.*, *supra*.)

In *Wood* it was held that pecuniary loss to a surviving wife for the wrongful death of her husband was based upon conditions as they existed at the time of the death, and in upholding the trial court's ruling refusing proffered evidence that the wife was contemplating remarriage, the reviewing court took cognizance that, by the great weight of authority in actions for wrongful death, evidence is inadmissible that a surviving spouse has remarried since the death complained of, and that this fact is not to be considered in mitigation of the damages recoverable in behalf of the surviving spouse.

Defendant also places strong reliance upon *Rayner* v. *Ramirez*, 159 Cal.App.2d 372 [324 P.2d 83]. That case was discussed in *Wood* and distinguished as factually different from the case under consideration in that, in *Rayner*, the plaintiff had testified, without objection, to the fact that she had not remarried, and that accordingly, the objection could not be raised for the first time on appeal. Moreover, *Wood* points out, as did the appellate court in *Rayner*, that the evidence was properly received for purposes of impeachment.

Although the rule excluding evidence of remarriage may, at first blush, appear to be unreasonable and unjust, the rationale underlying the rule is best explained in *Reynolds* v. *Willis* (Del.) 209 A.2d 760 where it was stated that it was more reasonable to say that a defendant should not be allowed to profit by an actual or possible remarriage of the widow, just as he may not profit through monies coming to her from insurance policies purchased by her husband upon his own life, or from some other collateral source.

### Proof of Damages

Defendant argues that plaintiff failed completely to prove any financial loss. This contention is without merit. Plaintiff, in addition to testifying as to the nature of the

personal relation that existed between her and the decedent, testified that he was 41 years of age and she 37 at the time of his death; that they had been married since April 1, 1958 (11 months); that he was a good worker who earned between five and six hundred dollars per month; and that his income averaged $6,500 yearly. The record discloses, moreover, that decedent's life expectancy was 31 years. In a wrongful death claim arising out of the death of a husband, the chief element of damage is the present value of the earnings which said spouse would have contributed (or been liable to contribute) to the support of the survivor. (See *Shebley* v. *Peters,* 53 Cal.App. 288 [200 P. 364]; *Brown* v. *Boehm,* 78 Cal.App.2d 595 [178 P.2d 49].) Extended over his life expectancy decedent's earnings would have aggregated $201,500. The verdict in this case, for the sum of $60,000 for plaintiff's pecuniary loss including loss of comfort, society and protection, finds support in the evidence.

### Examination of Witness Ayen

 Plaintiff was permitted to call one of the deceased's employers, Mr. Ayen, as an adverse witness and to examine him as though he had been called under Code of Civil Procedure section 2055. Defendant cites no authority declaring the procedure complained of to be error. Moreover, he does not indicate that he was harmed by such procedure, particularly in view of the grounds urged on appeal. Mr. Ayen's testimony dealt essentially with the liability aspect of the case with which we are not concerned on this appeal.

In any event it appears that the trial court did not abuse its discretion. The record discloses that the court relied on our decision in *Travis* v. *Southern Pacific Co.,* 210 Cal.App.2d 410 [26 Cal.Rptr. 700], where the court permitted the defendant to call a witness with the understanding that either party could cross-examine him because he had made some prior inconsistent statements and it was in the interests of justice to put him on the stand to see if he would testify as to the situation.

### The Witt v. Jackson Procedure

 Upon this final issue on appeal defendant-appellant becomes the respondent, plaintiff-respondent becomes a disinterested bystander, and new parties, the lien-claimants, become the appellants. The lien-claimants, asserting that they have been deprived of due process, present an issue of first impression involving the manner in which the rule of *Witt* v.

358

*Jackson*, 57 Cal.2d 57 [17 Cal.Rptr. 369, 366 P.2d 641], may be raised in a third party action for wrongful death. That rule provides that a third party tortfeasor may invoke the concurrent negligence of the employer to defeat the latter's right to reimbursement for workmen's compensation benefits paid to an employee proximately injured as a result of the negligence of such third party, whether an action against said third party is brought by an employer who has already paid workmen's compensation or by the employee who has received compensation.

The procedure below was as follows: Plaintiff filed a third party action for wrongful death alleging the negligence of defendant who answered with a general denial and alleged affirmatively in his answer that decedent was contributorily negligent, that he assumed the risk of injury, and that his death was solely and proximately caused by negligence on the part of decedent's fellow employees. Although the pretrial order designated the issues as: "1. Negligence. 2. Contributory negligence. 3. Assumption of risk. 4. Proximate Cause. 5. Damages," the record is silent as to any question arising under the *Witt* doctrine until the first day of the second trial when counsel for defendant advised the trial court that he did not intend to raise the *Witt* issue before the jury but that he reserved the right to raise all the benefits of the doctrine of that case "at a time subsequent to this trial."[7] The trial proceeded with no mention of workmen's compensation or of the *Witt* doctrine. A reading of the record discloses that with respect to negligence the case was tried solely upon the issues as to whether the defendant was negligent and whether the deceased was contributorily negligent. Although the record does reveal that deceased's employer's negligence was presented to the jury, i.e., the jury was advised that if, by reason of a violation of certain ordinances, the employer's negligence was the sole proximate cause of the accident, then defendant was not liable. The jury, by its finding that defendant was

[7]The colloquy occurring between court and counsel was as follows: "MR. O'DEA [counsel for plaintiff]: Fourthly, understand that MR. Berry [counsel for defendant Dean] has waived any right to raise the question of *Witt* v. *Jackson*, 57 Cal.2d. MR. BERRY: Well, my position is simply this, that the right to an off-set under Witt against Jackson may be raised at any time. All that I'm declaring is that I don't intend to raise it as an issue before this jury. I think it will develop from this record that Ayen's negligence is conceded, virtually stipulated to, which would preclude, or which would, in practical effect, settle that issue, and I reserve the right to raise all of the benefits of the Witt against Jackson doctrine at a time subsequent to this trial. THE COURT: Not before the jury. MR. BERRY: That's right. MR. O'DEA: O.K., I think that's all."

negligent, impliedly found that deceased's employer's negligence, if any, was not the sole proximate cause of the accident. It was never called upon, however, to specifically determine whether the employer was concurrently negligent and whether that negligence was a proximate cause of the accident.

Following entry of judgment, defendant moved for an order barring the workmen's compensation lien, and served a copy of said motion upon decedent's employers, their workmen's compensation insurance carrier, Pacific Employers Insurance Company, and upon plaintiff and her counsel. Following the hearing of the motion, the motion was granted and a modified judgment was entered reducing plaintiff's judgment by the amount of $12,447.25, representing workmen's compensation benefits paid plaintiff.

The lien-claimants' contentions before us are directed at the particular procedure employed by the trial court and allege that they were deprived of their property, the lien, without due process of law, i.e., without a fair hearing and opportunity to present witnesses. The major ground cited as error is that the pleadings in the trial nowhere asserted the contributing negligence of the employers[8] and that, thus, the employers were not properly before the court and the issue of contributing negligence could not be decided by the court on motion.

In *Witt* it was noted that "There are three ways in which an employer who becomes obligated to pay compensation to an employee may recover the amount so expended against a negligent third party. He may bring an action directly against the third party (Lab. Code, § 3852), join as a party plaintiff or intervene in an action brought by the employee (Lab. Code, § 3853), or allow the employee to prosecute the action himself and subsequently apply for a first lien against the amount of the employee's judgment, less an allowance for litigation expenses and attorney's fees (Lab. Code, § 3856, subd. (b)). . . ." (P. 69.)

In the instant case the record discloses that at the hearing of the subject motion, counsel for the lien-claimants was called as a witness and testified that he had made arrangements with Mr. Palmquist, counsel of record for plaintiff, to protect their lien on a no fee basis. This arrangement was

---

[8]While the cases talk of "contributing negligence" of an employer, it appears that concurrent negligence might be a more appropriate term.

entered into prior to the *Witt* decision. Following that decision Mr. Palmquist addressed a letter to the Pacific Employers Insurance Company advising that he could no longer represent the lien-claimants in the proceedings due to a possible conflict of interest. Following receipt of this letter counsel for the lien-claimants had a personal conversation with Mr. Palmquist in which it was agreed, or at least the former believed it was agreed, that plaintiff's counsel would continue to represent the lien-claimants up until a conflict should arise as demonstrated by an amendment to the answer to plead the negligence of the employers.[9]

In *Tate* v. *Superior Court*, 213 Cal.App.2d 238 [28 Cal. Rptr. 548], it was held that an employer or his compensation carrier need not join or be required to join, in an action brought by an employee against a third party tortfeasor, and that if the employer or his carrier elect not to join as a party, the employee, in effect, represents the common interest in seeking a recovery which the employer may share under Labor Code section 3856, subdivision (b). The reviewing court equated the position of the employee as that of a trustee of an express trust and that of the employer or his carrier as that of a beneficiary of the trust. After noting that under Code of Civil Procedure section 369 such a trustee or a person expressly authorized by statute may sue without joining the persons for whose benefit the action is prosecuted, the appellate court observed that, although a conflict of interest may arise whenever more than one person is beneficially interested in a single cause of action if the defendant should plead a defense or offset which will defeat one but not all of those beneficially interested in the plaintiff's case, such possibility does not require that the persons beneficially interested be joined in every case. Accordingly, it was held in *Tate* that, whether or not the employer or his carrier elect to join in such a third party action, that the defendant can nevertheless urge the defense of the employer's contributory negligence in such action and that such determination is binding upon the employer and his carrier. (See also *City of Sacramento* v. *Superior Court*, 205 Cal.App.2d 398, 402-403 [23 Cal.Rptr. 43] ; 50 Cal.L.Rev. 571, 577.) In reaching this conclusion *Tate* relies upon the following statement in *Witt* : "Thus, whether an action is brought by the employer or the employee, the third party tortfeasor should be able to invoke the concurrent

---

[9]Defendant's answer and the second and final pretrial order were both filed prior to the *Witt* decision.

negligence of the employer to defeat its right of reimbursement, since, in either event, the action is brought for the benefit of the employer to the extent that compensation benefits have been paid to the employee." (57 Cal.2d at p. 72.)

In view of the foregoing it appears that plaintiff was representing the common interest of plaintiff and the lien-claimants whether plaintiff's counsel had agreed to do so or not. By the same token, defendant was entitled to urge the employer's concurrent negligence in that action. The third party tortfeasor may protect his right of reduction or setoff by alleging the contributing negligence of the employer by answer (*Tate* v. *Superior Court, supra*, pp. 247-248; *Chick* v. *Superior Court*, 209 Cal.App.2d 201, 206 [25 Cal.Rptr. 725]) or by cross-complaint (*City of Sacramento* v. *Superior Court, supra*, p. 405; *Tate* v. *Superior Court, supra*, p. 247). In the present case defendant alleged in his answer that the accident was "solely and proximately caused by negligence on the part of decedent's fellow employees." In the absence of a direct attack by demurrer for more specificity, this allegation charges negligence on the part of the employers' employees, and since such negligence would be imputable to the employers under the doctrine of *respondeat superior*, it suffices to allege concurrent negligence on the part of the employers and thus to present the issue under the *Witt* doctrine. In any event, it was never urged in the court below, nor is it now urged on appeal, that the issue tendering the *Witt* doctrine was not properly pleaded.

Where the *Witt* doctrine is an issue in the case it must and should, in our opinion, be tried in the main case unless that issue is severed by the court under its power under Code of Civil Procedure section 1048.[10] (See *City of Sacramento* v. *Superior Court, supra*, p. 403; *Roylance* v. *Doelger*, 57 Cal.2d 255, 261 [19 Cal.Rptr. 7, 368 P.2d 535].) Accordingly, counsel for defendant was in error when he stated that he could urge defendant's right under the *Witt* doctrine "at any time." As stated in *City of Sacramento, supra*, "If the substantive right exists, procedural technicalities should not be created by judicial decision to require a second action before a separate jury, retelling the whole story of the accident so that the second jury can decide that which the first could just as readily have determined." (P. 403.)

---

[10]Section 1048 of the Code of Civil Procedure provides, in pertinent part, that "An action may be severed . . . whenever it can be done without prejudice to a substantial right."

We are of the opinion, however, that in this case there was a severance of the action as to the issue under the *Witt* doctrine. It is apparent from the colloquy between counsel during the jury trial, hereinabove alluded to, that counsel for plaintiff and defendant stipulated, with the consent of the court, to the trial of this issue at a time subsequent to the jury trial. Since, as we have pointed out above, the lien-claimants had elected not to join as parties and, therefore, plaintiff was representing their common interest, the lien-claimants were bound by any stipulations entered into by plaintiff.

It is equally apparent from the record that when the motion to bar the lien-claimants' lien came on for hearing the trial court proceeded to consider and determine the severed *Witt* doctrine issue. No objection to this procedure was interposed by any of the parties, including lien-claimants who were then parties to said hearing. A reading of the record discloses that all of the parties to this hearing were willing that the *Witt* doctrine issue be determined by the same trial judge who had presided over the jury trial and who had heard the evidence in the case. This issue, having been submitted to the trial judge, sitting without a jury, the court made findings to the effect that decedent's employers were guilty of negligence at the time of decedent's death and that such negligence was a proximate cause of his death. Based upon this finding the trial judge made the order barring the lien of lien-claimants and reducing plaintiff's judgment as hereinabove indicated. We here point out that no contention is made that the evidence was insufficient to support the finding of negligence upon the part of the employers. The facts elicited at trial showed that decedent's employers attempted to move a large steel beam across a public street without any attempt at warning or any evidence of any precautions taken to protect either the public or the employees involved in the operation. Moreover, all of this was done in the absence of the statutorily-required permit to obstruct streets. In fact, Ayen was even quoted as saying "I will get a manslaughter charge out of this." Having agreed to a determination of the employers' negligence as a matter for determination by the trial court, the lien-claimants cannot now assert error.

The judgment in favor of plaintiff and against defendant and the order granting defendant's motion for an order barring the lien of lien-claimants and reducing plaintiff's judgment to the full extent of said lien are affirmed. Plaintiff shall recover her costs on appeal from defendant, and defend-

ant shall recover one-half of his costs on appeal from lien-claimants.

Sims, J., concurred.

A petition for a rehearing was denied April 4, 1967.